**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| STEPHEN MORELAND REDD, individually and on behalf of all others similarly situated, | No. 21-55464 |
| | D.C. No. 2:16-cv-01540-DMG-PJ |
| *Plaintiff-Appellant*, | |
| v. | |
| PATRICIA GUERRERO, Chief Justice of California; KIMBERLY MENNINGER, Judge of the Superior Court of California, County of Orange, et al.[*] | OPINION |
| *Defendants-Appellees*. | |

Appeal from the United States District Court
for the Central District of California
Dolly M. Gee, District Judge, Presiding

Argued and Submitted May 11, 2022
Portland, Oregon

Filed October 20, 2023

---

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Patricia Guerrero is substituted for her predecessor, Tani Gorre Cantil-Sakauye, as Chief Justice of the California Supreme Court.

Before: Marsha S. Berzon, Richard C. Tallman, and
Morgan Christen, Circuit Judges.

Opinion by Judge Berzon

## SUMMARY[**]

### Procedural Due Process/Prisoner Civil Rights

The panel reversed the district court's dismissal of a complaint for failure to state a claim, and remanded, in a 42 U.S.C. § 1983 action brought by Stephen Redd, a California state prisoner sentenced to death, alleging that state officials are violating his procedural due process rights by failing to appoint postconviction relief counsel as required by California law.

In 1997, the same year that a California court sentenced Redd to death, the California legislature codified a longstanding judicial rule guaranteeing the appointment of postconviction relief counsel to indigent prisoners who had been convicted and sentenced to death. Redd requested the appointment of postconviction habeas counsel 26 years ago. No lawyer has been appointed.

The panel held that Redd has standing because he has adequately shown that the declaratory relief he seeks would redress his injuries.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel agreed with the district court that abstention under *O'Shea v. Littleton*, 414 U.S. 488 (1974), as to Redd's individual request for declaratory relief was not appropriate. Providing declaratory relief in this case would not require the federal court to monitor the substance of ongoing state criminal proceedings and would allow Reed's habeas proceeding to finally move forward.

Addressing the merits, the panel held that California is under no federal constitutional obligation to appoint postconviction counsel for all indigent capital prisoners. But because California has guaranteed the appointment of such counsel by statute, Redd stated a viable due process claim by alleging that he has been deprived of a valuable property interest for over a quarter century. Because his property interest claim was legally plausible, the panel reversed the district court's dismissal of Redd's complaint.

However, the panel held that Redd's complaint as presently drafted did not plausibly allege that the state has failed to adequately protect his liberty interest in petitioning for habeas corpus. Under Supreme Court precedent, the absence of appointed counsel, without more, does not preclude Redd from vindicating his liberty interest in petitioning for habeas corpus. Redd had not alleged that he was unable to withdraw his request for appointment of counsel and instead litigate his habeas petition *pro se*.

**COUNSEL**

Karim J. Kentfield (argued), Paul D. Meyer, and Lillian J. Mao, Orrick Herrington & Sutcliffe LLP, San Francisco, California; Mark S. Davies, Orrick Herrington & Sutcliffe LLP, Washington, D.C.; Ronald A. McIntire and Taylor R. Russell, Perkins Coie LLP, Los Angeles, California; for Plaintiff-Appellant.

Raymond A. Cardozo (argued) and Brian A. Sutherland, Reed Smith LLP, San Francisco, California; Kasey J. Curtis, Reed Smith LLP, Los Angeles, California; for Defendants-Appellees.

**OPINION**

BERZON, Circuit Judge:

In 1997, a California court sentenced appellant Stephen Moreland Redd to death. That same year, the California legislature codified a longstanding judicial rule guaranteeing the appointment of postconviction relief counsel to indigent prisoners who had been convicted and sentenced to death. *See* Cal. Gov't. Code § 68662(a), added by Cal. Stats. 1997, ch. 869, sec. 3 (Senate Bill No. 513); *see also* Cal. Penal Code § 1509(b). Redd requested the appointment of postconviction habeas counsel 26 years ago. To this day, no lawyer has been appointed.

Redd filed this action under 42 U.S.C. § 1983, claiming that by failing to appoint counsel as promised and so preventing him from developing and prosecuting his state habeas corpus petition for over two decades, state officials

are violating his procedural due process rights. He alleges that in the interim, "numerous witnesses" have died and other critical evidence has been lost or destroyed. The delay has "adversely affected his ability" to present claims that both "his conviction and [his] death sentence are unlawful." By undermining his ability to move forward with his state habeas case, the delay has prevented him from challenging his conviction in a federal habeas petition. He seeks a declaration that state officials' "failure to timely appoint counsel is in violation" of his due process rights. The district court dismissed his complaint for failure to state a claim.

Our central question is whether, based on the circumstances alleged in Redd's complaint, it is legally plausible that he will be able to establish that his 26-year wait for appointed counsel to litigate his habeas petition violates the Due Process Clause. California is under no federal constitutional obligation to appoint postconviction counsel for all indigent capital prisoners. *See Coleman v. Thompson*, 501 U.S. 722, 752 (1991); *Murray v. Giarratano*, 492 U.S. 1, 10 (1989); *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). But because California has guaranteed the appointment of such counsel by statute, we conclude Redd has stated a viable due process claim by alleging that he has been deprived of a valuable property interest for over a quarter century. As for Redd's claim that the state has failed to adequately protect his liberty interest in petitioning for habeas corpus, we conclude that his complaint as presently drafted does not plausibly state such a claim. Because his property interest claim is legally plausible, we reverse the district court's dismissal of Redd's complaint.

## I. Background

### A. California's Habeas System

To obtain relief from a criminal conviction in California, "resort to habeas corpus is . . . required" whenever "reference to matters outside the record is necessary to establish that a defendant has been denied a fundamental constitutional right." *In re Bower*, 38 Cal. 3d 865, 872 (1985). Consequently, challenges to convictions based on evidence outside the trial record—including claims based on ineffective assistance of counsel, newly discovered evidence, or reliance on false evidence at trial (*see* Cal. Penal Code § 1473)—ordinarily can be brought only in postconviction habeas. *See People v. Mendoza Tello*, 15 Cal. 4th 264, 266 (1997); *Bower*, 38 Cal. 3d at 872. And because a prisoner generally must exhaust his claims in state court before presenting them in a federal habeas petition, exhaustion of the state's habeas process is usually a prerequisite to filing a federal habeas petition based on the same alleged constitutional violations. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b)(1)(A), (c).

Concomitantly, California law guarantees the right of "a person unlawfully imprisoned or restrained of their liberty" to challenge the lawfulness of their conviction by seeking habeas corpus relief in state court. Cal. Penal Code § 1473; *see also* Cal. Const., art. I, § 11; Cal. Penal Code § 1509. "If no legal cause is shown for [the] imprisonment or restraint," the court "must discharge" the habeas petitioner from the challenged custody or restraint. Cal. Penal Code § 1485. To permit federal habeas relief, a state habeas petition must ordinarily be filed within one year after a criminal judgment becomes final. *See In re Morgan*, 50 Cal. 4th 932, 939

(2010). The reason is that a federal habeas petition is subject to a one-year limitations period, but that period is tolled as long as a state habeas petition is pending. *See* 28 U.S.C. § 2244(d)(1)(A), (d)(2).

As part of the right to seek habeas relief, California law guarantees the appointment of state habeas counsel for indigent death row prisoners. California Government Code section 68662 provides that the "superior court that imposed the sentence shall offer to appoint counsel to represent a state prisoner subject to a capital sentence for purposes of state postconviction proceedings" and "shall enter an order" appointing such counsel "*upon a finding* that the person is indigent and has accepted the offer to appoint counsel or is unable to competently decide whether to accept or reject that offer." Cal. Gov't Code § 68662(a) (emphasis added); *see also* Cal. Penal Code § 1509(b) ("After the entry of a judgment of death in the trial court, that court shall offer counsel to the prisoner as provided in Section 68662 of the Government Code.").[1]

---

[1] Section 68662, in full, reads:

> The superior court that imposed the sentence shall offer to appoint counsel to represent a state prisoner subject to a capital sentence for purposes of state postconviction proceedings, and shall enter an order containing one of the following:
>
> (a) The appointment of one or more counsel to represent the prisoner in proceedings pursuant to Section 1509 of the Penal Code upon a finding that the person is indigent and has accepted the offer to appoint counsel or is unable to competently decide whether to accept or reject that offer.
>
> (b) A finding, after a hearing if necessary, that the

As amended in 2016, the California Penal Code imposes a duty on superior courts to conduct capital habeas review proceedings "as expeditiously as possible, consistent with a fair adjudication," and requires the superior courts to "resolve the initial petition within one year of filing unless the court finds that a delay is necessary to resolve a substantial claim of actual innocence, but in no instance shall the court take longer than two years to resolve the petition." Cal. Penal Code § 1509(f); *see also* Cal. Prop. 66, the Death Penalty Reform and Savings Act of 2016 (Gen. Elec. (Nov. 8, 2016) § 6).

Consistent with the statutory requirements that counsel be appointed "upon [the requisite] finding[s]" and that habeas petitions be determined expeditiously, the California Supreme Court has directed "expeditious appointment" of habeas counsel in capital cases "to investigate potential claims for relief and to prepare a habeas corpus petition at roughly the same time that appellate counsel is preparing an opening brief on appeal." *Morgan*, 50 Cal. 4th at 937. To achieve this goal, said the court, habeas counsel "[i]deally" should be appointed "shortly after an indigent defendant's judgment of death." *Id*. Similarly, the California Supreme Court's policies concerning capital cases provide that counsel should be appointed "simultaneously with the appointment of appellate counsel or at the earliest practicable time thereafter." Cal. Sup. Ct., *Policies Regarding Cases Arising from Judgments of Death*, Policy 3, std. 2-1 (amended Feb. 4, 1998),

---

prisoner rejected the offer to appoint counsel and made that decision with full understanding of the legal consequences of the decision.

(c) The denial to appoint counsel upon a finding that the person is not indigent.

https://www.courts.ca.gov/documents/Policies_Regarding_
Cases_Arising_from_Judgments_of_Death.pdf; *see also id.*
Policy 3, std. 1–1.1 (amended Nov. 30, 2005).

Once capital habeas counsel is appointed, a petition must generally be filed within one year of the appointment. Cal. Penal Code § 1509(c). But because many capital prisoners, like Redd, in actuality wait years for the appointment of habeas counsel, the California Supreme Court has a "practice of deferring consideration of cursory habeas petitions filed by unrepresented defendants," recognizing that so long as the petitions remain pending, the one-year limitations period for federal habeas petitions is tolled. *Morgan*, 50 Cal. 4th at 937–39 & n.5, 941. Once appointed, counsel may investigate the prisoner's claims and then amend the "shell petition." *Id.* at 941, 942.

In contrast to California law mandating the appointment of postconviction counsel for indigent capital prisoners, there is no federal constitutional right to habeas counsel. *Finley* declined to recognize a constitutional right to counsel for prisoners mounting collateral attacks on their convictions. 48 U.S. at 555. *Murray* extended *Finley* to capital prisoners, concluding that due process does not itself require the assistance of counsel in postconviction proceedings for individuals sentenced to death. 492 U.S. at 10. And *Coleman*, another capital case, cited *Finley* for the proposition that "[t]here is no constitutional right to an attorney in state post-conviction proceedings," but left open the question of whether there might be such a right in "cases where state collateral review is the first place a prisoner can present a challenge to his conviction." 501 U.S. at 752, 755.

**B. Redd's Claims**

Redd alleges that, despite the California Supreme Court's directive that counsel in capital cases be appointed "expeditious[ly]," *Morgan*, 50 Cal. 4th at 937, he has been waiting for an appointed counsel for more than a quarter century. He was convicted of first-degree murder, attempted murder, second-degree robbery, and second-degree commercial burglary, and sentenced to death, in 1997. After his conviction, the California Supreme Court found that he was indigent and appointed him counsel for his direct appeal; it did not appoint habeas counsel at that time.

Redd lost his direct appeal in 2010. Since that time, Redd has written letters to the California Supreme Court requesting appointment of habeas counsel. Also in 2010, the California Appellate Project, a non-profit organization that assists indigent prisoners facing execution, *see Morgan*, 50 Cal. 4th at 935, n.2, filed a placeholder "shell" habeas petition on Redd's behalf.[2]

According to the First Amended Complaint (or "complaint"),[3] Redd is one of more than 363 people on death row in California awaiting the appointment of habeas counsel. At the time Redd filed the complaint, 130 of those

---

[2] Redd's original *pro se* complaint in this case alleged that the California Supreme Court "refuses to file pro se briefs" and that he attempted unsuccessfully to file a *pro se* motion to recall the remittitur in connection with his direct appeal. The currently operative First Amended Complaint does not repeat these allegations.

[3] Because this appeal comes to us from the district court's grant of a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to Redd and assume the facts alleged in his complaint are true. *See Gilstrap v. United Air Lines, Inc.*, 709 F.3d 995, 998 n.1 (9th Cir. 2013).

individuals had been waiting between 15 and 25 years from the time they were sentenced for the appointment of counsel.

Redd alleges that "[u]pon the entry of judgment" in 1997, he was entitled under state law to state-appointed counsel for his habeas proceedings. More than two decades after his death sentence, and despite having been found indigent by the California Supreme Court and having asked for appointment of counsel, Redd continues to await the appointment of counsel to represent him in his habeas proceedings. This delay "has significantly and adversely affected his ability to develop, present, and prove claims that his conviction and death sentence are unlawful." In the interim, numerous witnesses have died and others "with critical information have become infirm or impaired or have had substantial memory loss," and important "documents and other exculpatory evidence have been lost or destroyed." Because he must first exhaust his claims in state court before filing a federal habeas petition, *see O'Sullivan*, 526 U.S. at 842, the delay has also harmed Redd's ability to pursue federal habeas relief.

Redd's complaint names as defendants the justices of the California Supreme Court and the judges of the California Superior Courts (together, "State Officers"), based on their duties as court administrators. Redd alleges that the State Officers are responsible for appointing habeas counsel but "have refused to appoint in a timely manner" the counsel to which he is entitled under state law. He also alleges that the State Officers have not promulgated adequate rules providing for compensation of capital habeas counsel or for reimbursing them for necessary litigation expenses, and they have "fail[ed] to provide sufficient compensation and litigation expenses to attract private counsel to accept such appointments." According to Redd, the failure to appoint

qualified capital habeas counsel is due to "underfunding of the capital defense program" and a "serious shortage of qualified . . . counsel willing to accept [] appointment[s] as habeas corpus counsel in a death penalty case."  Redd seeks a declaration that California's failure to timely appoint state habeas counsel is depriving him of liberty and property interests without due process of law.

Redd brought the suit on his own behalf and also as a putative class action on behalf of all other indigent capital prisoners in California who have been deprived of the timely appointment of state habeas counsel.  As the district court dismissed his complaint, his case never proceeded to the class certification stage.  We therefore consider in this opinion only Redd's own due process claim, not that of any other death row prisoner whose state habeas petition has been delayed pending appointment of habeas counsel.[4]

## C. Procedural History

In 2013, Redd filed a *pro se* federal petition for a writ of habeas corpus challenging his conviction.  The district court dismissed that petition for failure to exhaust state law remedies.  This Court declined to issue a certificate of appealability, and Redd filed a petition for a writ of certiorari in the U.S. Supreme Court.  The Supreme Court denied Redd's petition.  *Redd v. Chappell*, 574 U.S. 1041 (2014).  In a statement respecting the denial of certiorari, Justice Sotomayor, joined by Justice Breyer, suggested that Redd "might seek to bring a 42 U.S.C. § 1983 suit contending the State's failure to provide him with the counsel to which he

---

[4] The complaint also alleges that California's delay in appointing state habeas counsel violates Redd's right to access the courts under the First, Fifth, and Fourteenth Amendments.  Redd has not challenged on appeal the district court's dismissal of that claim.

is entitled violates the Due Process Clause." *Id.* (Sotomayor, J., respecting the denial of certiorari).

Following Justice Sotomayor's suggestion, Redd filed a *pro se* section 1983 complaint in district court. The court dismissed that complaint *sua sponte* for failure to state a claim. Redd appealed. This Court appointed pro bono counsel and granted Redd's unopposed motion to vacate the district court's dismissal and remand to the district court with instructions to give him leave to amend his complaint. Through counsel, Redd then filed the amended complaint in 2019.

### D. District Court Decision

The State Officers moved to dismiss Redd's complaint for lack of standing, on abstention grounds, and for failure to state a claim. The district court granted the motion on the ground that the complaint failed to state a claim. *Redd v. California Supreme Ct.*, No. CV161540DMGPJWX, 2021 WL 1803211, at *8–10 (C.D. Cal. Mar. 31, 2021).

The court first rejected the State Officers' argument that Redd lacks standing because his injury is not fairly traceable to their conduct or redressable by a judgment against them. *Id*. at *4–6. The court concluded that although the California legislature, rather than the State Officers, is responsible for funding state habeas counsel, the State Officers "have the ability to provide guidance for the hourly rate to be paid to habeas counsel, provide a different maximum for litigation expenses, allocate additional funds for habeas counsel from their own budget, provide additional resources to the

[Habeas Corpus Resource Center]**5**, or otherwise attract qualified counsel." *Id*. at *5. Redd therefore showed that success against the State Officers "would increase the likelihood that his injury would be directly redressed, at least in part." *Id.* at *6.

The district court next rejected the State Officers' argument that the court must abstain under the equitable doctrine set forth in *O'Shea v. Littleton*, 414 U.S. 488 (1974). *Redd*, 2021 WL 1803211, at *6–7. Under *O'Shea*, federal courts abstain from ruling on the merits of a claim where the court would have to "monitor the substance of individual cases on an ongoing basis to administer its judgment." *Courthouse News Serv. v. Planet*, 750 F.3d 776, 790 (9th Cir. 2014). The district court concluded that, although Redd brings a systemic challenge to California's system of appointing state habeas counsel, he seeks "a bright-line declaration that the system[] [is] unconstitutional." *Redd*, 2021 WL 1803211, at *7. Awarding him declaratory relief, said the court, would "not require intensive continued intervention by federal courts into state judicial affairs." *Id*.**6**

---

5 The Habeas Corpus Resource Center is a state entity established by the California legislature to represent indigent capital prisoners in postconviction matters. *See Morgan*, 50 Cal. 4th at 938; Cal. Gov't Code § 68661.

6 The district court also rejected the State Officers' assertion that the Eleventh Amendment bars Redd's claims, as Redd's lawsuit is an *Ex parte Young* action "seeking only prospective declaratory or injunctive relief against state officers in their official capacities." *Redd*, 2021 WL 1803211, at *7 (quoting *L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992)). The State Officers do not raise their Eleventh Amendment argument on appeal.

On the merits, the district court concluded that Redd lacks a constitutionally protected liberty interest in California's appointment of habeas counsel and so failed to state a cognizable procedural due process claim. *Id.* at *9. The court recognized that a state statute may create a protected liberty interest if the statute contains "(1) 'substantive predicates' governing official decisionmaking, and (2) 'explicitly mandatory language' specifying the outcome that must be reached if the substantive predicates have been met." *Id.* at *8 (quoting *Bonin v. Calderon*, 59 F.3d 815, 842 (9th Cir. 1995)). And the court concluded that California Government Code section 68662 met those prerequisites, as it mandates the appointment of counsel as long as a capital prisoner is indigent and accepts an offer for counsel. *Id*. But, the court explained, Redd had no liberty interest in the appointment of counsel because the right to state-appointed habeas counsel is only a "state *procedural* right which is itself designed to facilitate the protection of more fundamental substantive rights." *Id*. at *9. "California's appointment of counsel," the district court reasoned, "is designed to protect Plaintiff's right to present a habeas petition, not to create a 'substantive end' in itself." *Id.* (quoting *James v. Rowlands*, 606 F.3d 646, 657 (9th Cir. 2010)).

Redd timely appealed.

## II.  Discussion

### A.  Redressability

In the district court, the State Officers contended that Redd lacks standing because his injury is not redressable by a decision in its favor. They do not renew their standing argument on appeal. We agree with the district court that Redd has standing.

To establish constitutional standing, Redd must show he "has suffered an 'injury in fact,' that the injury is 'fairly traceable' to the conduct at issue in the plaintiff's claim, and that 'it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Ctr. for Biological Diversity v. Exp.-Imp. Bank of the U.S.*, 894 F.3d 1005, 1012 (9th Cir. 2018) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). "[T]he ability 'to effectuate a partial remedy' satisfies the redressability requirement." *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 801 (2021) (quoting *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 13 (1992)). "The party invoking federal jurisdiction bears the burden of establishing these elements . . . with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

The district court correctly concluded, for purposes of this early stage of the litigation, that it is likely that a decision in Redd's favor would redress his injury. Redd alleges that the state has unlawfully delayed appointing him habeas counsel, and that he has been injured by that delay. He requests a declaratory judgment that the state's failure to timely appoint him counsel violates his procedural due process rights.

Should he ultimately prevail in obtaining that declaration, it would likely redress his injury. Declaratory relief has "the force and effect of a final judgment." *Steffel v. Thompson*, 415 U.S. 452, 470 (1974) (citation omitted). Once a court issues a declaratory judgment, that order effectuates a change in the legal status between the parties such that " 'the practical consequence of that change would amount to a significant increase in the likelihood' " that the

plaintiff " 'would obtain relief that directly redresses the injury suffered.' " *Reed v. Goertz*, 598 U.S. 230, 234 (2023) (quoting *Utah v. Evans*, 536 U.S. 452, 464 (2002)).

In *Reed*, for example, a Texas prisoner filed a section 1983 action claiming that the state's postconviction DNA-testing procedures violated procedural due process. *Id*. at 233. A state court had denied his motion for DNA testing of evidence based on a strict state law chain-of-custody requirement. *Id*. The "only relief" sought was "a declaration that the [state court's] interpretation and application of state law was unconstitutional." *Id*. at 238, 245 (Thomas, J., dissenting); *see id.* at 234 (majority opinion). The Supreme Court held that a declaratory judgment against the state prosecutor would redress the state's denial of DNA testing. *Id*. at 234 (majority opinion). The declaration sought "would eliminate the state prosecutor's justification for denying DNA testing" and make it "'substantially likely' that the state prosecutor would abide by such a court order." *Id.* (quoting *Utah*, 536 U.S. at 464).

Similarly, in *Franklin v. Massachusetts*, 505 U.S. 788 (1992) (plurality), Massachusetts and two of its residents challenged the legality of a census-counting method that impacted the apportionment of state seats in the U.S. House of Representatives; the plaintiffs hoped that recalculation would lead to the assignment of an additional representative to Massachusetts. *See id.* at 803; *see also Utah*, 536 U.S. at 459–60, 463–64. *Franklin* concluded that the plaintiffs' injury "is likely to be redressed by declaratory relief against the Secretary alone." 505 U.S. at 803. Although "the President and other executive and congressional officials" with authority over reapportionment "would not be directly bound by such a determination," the Supreme Court "assume[d] it is substantially likely" that those officials

"would abide by an authoritative interpretation of the census statute and constitutional provision by the District Court." *Id.* *Utah* reaffirmed *Franklin*'s redressability holding on similar facts, concluding that "a declaration" would "lead[]" the Secretary to issue a new report, making it "substantially likely" that other officials would abide by the court's decision. *Utah*, 536 U.S. at 463–64 (quoting in part *Franklin*, 505 U.S. at 803).

Here, there's no question that the State Officers have the authority and the duty to appoint habeas counsel to an individual indigent capital prisoner like Redd, once requested. *See* Cal. Gov't Code § 68662(a); Cal. Penal Code § 1509(b). In addition, Redd alleges that the State Officers could have taken action that would have reduced the delay in appointment of counsel but failed in their responsibility to do so. Under California law, superior court judges are responsible for "develop[ing] and implement[ing] a plan to identify and recruit qualified counsel who may apply to be appointed" to represent indigent capital prisoners. Cal. R. Ct. 4.562(f). They have authority to appoint as habeas counsel qualified private attorneys, attorneys from a public defender's office, or attorneys from the Habeas Corpus Resource Center. Cal. Gov't Code § 68661(a); *see also* Cal. R. Ct. 4.561(e)(2). Further, the superior courts are authorized to provide for the appointment of qualified attorneys who are not members of the statewide panel of attorneys qualified to represent persons in death penalty-related habeas proceedings. *See* Cal. R. Ct. 4.562(g). In addition, the California Supreme Court is charged, along with the California Judicial Council, with adopting "binding and mandatory competency standards for the appointment of counsel in death penalty" habeas proceedings and must "reevaluate the standards as needed to ensure" competent

counsel and "to avoid unduly restricting the available pool of attorneys so as to provide timely appointment." Cal. Gov't Code § 68665(a), (b). Also, the Chief Justice of the California Supreme Court "may allocate funding appropriated" for the Supreme Court's annual budget to the Habeas Corpus Resource Center. Cal. R. Ct. 10.101(c)(2). And the California Supreme Court has the authority to set policy for compensation and payment of litigation expenses for appointed habeas counsel. Cal. Gov't Code § 68666. So, as the district court found, the State Officers "have the ability to provide guidance for the hourly rate to be paid to habeas counsel, provide a different maximum for litigation expenses, allocate additional funds for habeas counsel from their own budget, provide additional resources to the [Habeas Corpus Resource Center], or otherwise attract qualified counsel." *Redd*, 2021 WL 1803211, at *5.

Finally, Redd's showing of redressability is not undermined by his allegations that a shortage of qualified attorneys willing to accept appointment as capital habeas counsel and the underfunding of the capital indigent representation program have contributed to the delays. As noted, the State Officers are obligated to ensure that the qualification standards they set do not "unduly" restrict the pool of attorneys. Cal. Gov't Code § 68665(b). Nor does the fact that the State Officers may not have unlimited financial resources to draw from when taking action consistent with any declaratory judgment preclude a finding of redressability. Moreover, "[a] case [against government officials] seeking prospective relief . . . can't be dismissed simply because there is a shortage of resources." *Peralta v. Dillard*, 744 F.3d 1076, 1083 (9th Cir. 2014); *see Watson v. City of Memphis*, 373 U.S. 526, 537 (1963) ("[I]t is obvious that vindication of . . . constitutional rights cannot be made

dependent upon any theory that it is less expensive to deny than to afford them.").

At this stage of the litigation, we conclude Redd has adequately shown that the declaratory relief he seeks would redress his injuries. If the case progresses to the summary judgment stage, he will have to "offer evidence and specific facts demonstrating each element" of standing, including redressability. *Ctr. for Biological Diversity*, 894 F.3d at 1012.

## B. Abstention

The State Officers argue that we should affirm the dismissal of Redd's suit on the ground that the district court should have abstained under *O'Shea*. Because Redd's action never proceeded to the class certification stage, we deal only with his individual claims; whether abstention would be appropriate at the class certification stage is not before us and would likely be a considerably more viable contention. As to Redd's individual claims, although the State Officers' federalism and comity concerns are surely significant, ultimately we agree with the district court that *O'Shea* abstention is not appropriate here.[7]

### 1.

*O'Shea* abstention is one exception to the "virtually unflagging obligation" of federal courts "to exercise the jurisdiction given them." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). *O'Shea*

---

[7] As the parties correctly note, the standard of review for the district court's *O'Shea* abstention is "unsettled." *Courthouse News*, 750 F.3d at 782. We need not resolve whether the applicable standard is de novo or abuse of discretion review; under either standard, we conclude, the district court properly declined to abstain under *O'Shea*.

held that "the need for a proper balance in the concurrent operation of federal and state courts counsels restraint against the issuance of injunctions against state officers engaged in the administration of the State's criminal laws in the absence of a showing of irreparable injury which is 'both great and immediate.'"  414 U.S. at 499 (quoting *Younger v. Harris*, 401 U.S. 37, 46 (1971)).

*O'Shea* involved a class action lawsuit brought by civil rights activists alleging that the state prosecutor, local police, and state judges had engaged in a pattern of discriminatory criminal prosecutions in retaliation for the plaintiffs' activism.  414 U.S. at 490–92.  The activists sought an injunction to prevent the judicial defendants from engaging in certain unlawful practices, including setting bond without regard for individualized facts, imposing harsher sentences based on race, and requiring class members to pay for costs associated with their jury trials.  *Id.*

In concluding in *O'Shea* that abstention was appropriate, the Supreme Court noted that the plaintiffs there did "not seek to strike down a single statute" but rather sought "an injunction aimed at controlling or preventing the occurrence of specific events that might take place in the course of future state criminal trials."  *Id.* at 500.  The relief sought, said the Court, "contemplate[d] interruption of state proceedings to adjudicate assertions of noncompliance by petitioners" and would constitute "nothing less than an ongoing federal audit of state criminal proceedings."  *Id.* at 500–01.  The Court's concern in *O'Shea*, then, was that the requested injunction "would disrupt the normal course of proceedings in the state courts via resort to the federal suit for determination of the claim *ab initio*."  *Id*. at 501.

*O'Shea* abstention has proved exceedingly rare.**[8]**   We have abstained under *O'Shea* only "where the relief sought would require the federal court to monitor the substance of individual cases on an ongoing basis to administer its judgment." *Courthouse News*, 750 F.3d at 790.   Whether *O'Shea* abstention applies depends on the degree to which awarding relief in federal court would interfere intrusively in the state's administration of its judicial system going forward. *Id.* at 789–90.   Accordingly, *O'Shea* is not implicated when a plaintiff's only requested remedy is a "bright-line finding" that the defendant's action is unlawful, as such a finding does not require "the ongoing monitoring of the substance of state proceedings." *Id.* at 791; *see also Arevalo v. Hennessy*, 882 F.3d 763, 766 n.2 (9th Cir. 2018).

For example, *Los Angeles County Bar Association v. Eu*, 979 F.2d 697 (9th Cir. 1992), held that a lawsuit alleging that "delays in Los Angeles Superior Court deprive[d] litigants of their rights to due process and equal protection" did not call for abstention under *O'Shea*. *Id.* at 702–04.   There, the Los Angeles County Bar Association sought a declaration that a California statute prescribing the number of state superior court judges was unconstitutional because it created a shortage of judges, causing "inordinate delays in civil litigation." *Id.* at 699–700.   *Eu* held that the "case [wa]s a proper one for the exercise of our declaratory jurisdiction." *Id.* at 703–04.   We reasoned that the case did not require "[f]urther factual development" concerning the details of particular state court cases, and a bright-line declaration of

---

[8] We are aware of just two published cases in which we have concluded that abstention was proper under *O'Shea*: *E.T. v. Cantil-Sakauye*, 682 F.3d 1121 (9th Cir. 2012) (per curiam), and *Miles v. Wesley*, 801 F.3d 1060 (9th Cir. 2015).   We discuss these cases in greater detail below. *See infra*, Section II.B.3.

the statute's unconstitutionality "would resolve a substantial and important question currently dividing the parties." *Id.* at 703–04. As we later explained, "*O'Shea* did not apply" in *Eu* "because once the question of the number of judges was settled, 'supervision of the state court system by federal judges' would not be required." *Miles*, 801 F.3d at 1064 (quoting *Eu*, 979 F.2d at 703).

Similarly, *Courthouse News* held that *O'Shea* did not require abstention from a news organization's lawsuit seeking declaratory and injunctive relief ordering the clerk of the Ventura County Superior Court to provide the organization with same-day access to newly filed civil complaints. 750 F.3d at 779, 789. The requested relief was "more akin to the bright-line finding" approved in *Eu* because, to "determine whether the Ventura County Superior Court is making complaints available the day they are filed, a federal court would not need to engage in" any "intensive, context-specific legal inquiry." *Id.* at 791. *Courthouse News* explained that the "federal courts would not need to 'examin[e] the administration of a substantial number of individual cases' to assess whether the Ventura County Superior Court is adopting" adequate methods for compliance. *Id.* (alteration in original) (quoting *E.T.*, 682 F.3d at 1124). The fact that "*some* additional litigation may later arise" to enforce a federal court injunction did "not itself justify abstaining." *Id.* at 792.

**2.**

We are mindful that this case does implicate the delicate balance "between federal equitable power and State administration of its own law." *O'Shea*, 414 U.S. at 500 (quoting *Stefanelli v. Minard*, 342 U.S. 117, 120 (1951). Redd sues state judicial officers, albeit in their

administrative roles, and alleges profound problems with California's promise of postconviction habeas counsel for indigent capital prisoners.

But Redd requests less intrusive relief than that requested in *Eu* or *Courthouse News*, in which we concluded it was appropriate to exercise jurisdiction. At this stage of his case, we are dealing with only his individual request for declaratory relief rather than any systemic remedy: Redd seeks a declaration that the State Officers have violated *his* individual procedural due process rights by failing to appoint him habeas counsel for 26 years.

As only declaratory relief is sought, the district court, if it grants such relief, will have no occasion by virtue of that relief alone to further involve itself in the state officials' appointment of habeas counsel for Redd. So the central concern of *O'Shea* abstention—whether "the relief sought would require the federal court to monitor the substance of individual cases on an ongoing basis," *Courthouse News*, 750 F.3d at 790—is not implicated.

True, declaration in hand, Redd could seek an injunction in federal or state court mandating that he be appointed counsel. In the context of a different abstention doctrine, *see Younger*, 401 U.S. 37, the Supreme Court has stated that "declaratory relief alone has virtually the same practical impact as a formal injunction would," *Samuels v. Mackell*, 401 U.S. 66, 72 (1971). Noting that "a declaratory judgment issued while state proceedings are pending might serve as the basis for a subsequent injunction against those proceedings to 'protect or effectuate' the declaratory judgment," *id.*, *Samuels* held that for purposes of assessing the intrusiveness of injunctive and declaratory relief aimed at enjoining pending criminal proceedings, "the same

equitable principles relevant to the propriety of an injunction must be taken into consideration by federal district courts in determining whether to issue a declaratory judgment," *id*. at 73. *Samuels* also recognized, however, that "[t]here may be unusual circumstances in which an injunction might be withheld because, despite a plaintiff's strong claim for relief under the established standards, the injunctive remedy seemed particularly intrusive or offensive; in such a situation, a declaratory judgment might be appropriate." *Id*. at 73.

Three years later, *Steffel* considered whether abstention was appropriate where no criminal prosecution was pending and the plaintiff sought only declaratory relief. 415 U.S. at 462–63. In holding that abstention was not required, the Court explained that "even though a declaratory judgment has the force and effect of a final judgment, . . . it is a much milder form of relief than an injunction. Though it may be persuasive, it is not ultimately coercive; noncompliance with it may be inappropriate, but is not contempt." *Id.* at 471–72 (citations and internal quotation marks omitted); *see also id.* at 466 (explaining that "declaratory relief . . . [is] an alternative to the strong medicine of the injunction"). *Steffel* held that "[w]hen no state prosecution is pending," it is error to "treat[] [] requests for injunctive and declaratory relief as a single issue." *Id.* at 462–63.

Here, no state criminal prosecution is pending, and Redd makes no request for injunctive relief; nor does he seek to block any state proceedings.[9] To the contrary, he seeks relief

---

[9]   The State Officers, understandably, do not contend that *Younger* abstention is applicable here. "The Supreme Court [has] firmly cabined the scope of the [*Younger*] doctrine." *Applied Underwriters, Inc. v.*

that would allow his state habeas petition to finally go forward.  And a declaration that he has a right to be appointed counsel promptly would not result in ongoing interference with "the daily conduct of state criminal proceedings," *O'Shea*, 414 U.S. at 502, or with his state habeas proceedings.  Should Redd later seek an injunction, the district court then could, and should, consider carefully whether comity concerns counsel against such an injunction, especially if no attempt were first made to obtain relief in state court based on the federal declaratory relief.  Because no request for injunctive relief is before us, however, we

---

*Lara*, 37 F.4th 579, 588 (9th Cir. 2022).  The *Younger* doctrine applies where the federal plaintiff seeks to "stay or enjoin" a pending state criminal prosecution or certain government-instigated state civil enforcement proceedings and other threshold requirements are satisfied. *See, e.g.*, *Younger*, 401 U.S. at 41 (holding that it was improper for the district court in that case to enjoin a state prosecution against Younger, in light of "the national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances"); *Gilbertson v. Albright*, 381 F.3d 965, 978 (9th Cir. 2004) (en banc) (explaining that *Younger* applies in noncriminal cases "*[i]f* a state-initiated proceeding is ongoing"); *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1149 (9th Cir. 2007) (same); *see also Credit One Bank, N.A. v. Hestrin*, 60 F.4th 1220, 1225 (9th Cir. 2023) (explaining that *Younger* abstention applies only, inter alia, where "the requested relief seeks to enjoin or has the practical effect of enjoining the ongoing state judicial proceeding") (citation and internal quotation marks omitted). (In a third category of cases, *Younger* applies where the federal litigant seeks to negate certain state court orders issued in a civil proceeding. *Applied Underwriters*, 37 F.4th at 588, 590 n.4.)  Even where a state criminal prosecution is pending, "*Younger* abstention is not appropriate" where the federal constitutional question raised in the federal action "is separate from the state prosecution, and would not interfere with those proceedings." *Arevalo*, 882 F.3d at 766.  Here, the only pending state proceeding is a habeas petition, initiated by Redd, and his goal is to allow that proceeding to progress, rather than to block it.  *Younger* therefore has no application to this case.

need not decide that question here. *See Steffel*, 415 U.S. at 463 (explaining that the propriety of injunctive relief was "a question we need not reach today since petitioner has abandoned his request for that remedy").

Aside from the nature of the relief sought, the district court's exercise of jurisdiction over Redd's claims is no more disruptive than the adjudication of other cases involving claims that state postconviction or other procedures violate due process. For example, in *Coe v. Thurman*, 922 F.2d 528 (9th Cir. 1990), a habeas case, we held that a four-year delay in a California prisoner's criminal appeal violated due process and remanded with instructions to the district court to order the petitioner's release unless his appeal was heard within 90 days. *Id*. at 531–32. *Dist. Attorney's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52 (2009), similarly, resolved the merits of a section 1983 challenge to Alaska postconviction procedures for obtaining DNA evidence. *Id*. at 60, 67–71. The Supreme Court ultimately concluded that the plaintiff had not established a due process violation. *Id.* at 69–71. In so doing, the Court took into account federalism concerns in its merits analysis, explaining that "[f]ederal courts may upset a State's postconviction relief procedures only if they are fundamentally inadequate to vindicate the substantive rights provided." *Id*. at 69. *See also, e.g.*, *Skinner v. Switzer*, 562 U.S. 521, 525 (2011) (holding that a state prisoner's "postconviction claim for DNA testing is properly pursued in a § 1983 action"); *Morrison v. Peterson*, 809 F.3d 1059, 1064–65 (9th Cir. 2015) (holding, in a section 1983 challenge to California's postconviction DNA procedures, that the prisoner had a state law "liberty interest in demonstrating his innocence with new evidence . . . . because California law provides a right to be released from custody

pursuant to a writ of habeas corpus when there is no legal cause for imprisonment") (internal quotation marks and citation omitted).  More recently, in the civil context, we considered whether a California insurance indemnity statute violated a state court litigant's due process right to retain counsel, rejecting the challenge on the merits.  *See Adir Int'l, LLC v. Starr Indem. & Liab. Co.*, 994 F.3d 1032, 1041 (9th Cir. 2021).

Likewise, the federal courts have long adjudicated claims that state procedures for protecting state-created property interests are inadequate under the federal Constitution.  *See, e.g.*, *Goss v. Lopez*, 419 U.S. 565, 577–84 (1975) (holding that Ohio's public school disciplinary procedures were insufficient to protect students' property interest in public education); *Goldberg v. Kelly*, 397 U.S. 254, 260–61 (1970) (holding that New York hearing procedures for termination of public benefits violated procedural due process).

**3.**

We disagree with the State Officers' contention that *E.T.* and *Miles* and control the result here.  In *E.T.*, a plaintiff class of foster children alleged that overwhelming caseloads in Sacramento County dependency courts prevented court-appointed attorneys from providing effective assistance of counsel.  682 F.3d at 1122.  We explained that, "[b]ecause the question is one of *adequacy of representation*," as opposed to a bright-line determination like that in *Eu*, "potential remediation might involve examination of the administration of a substantial number of individual cases" to determine whether the quality of representation in each case met constitutional standards.  *Id.* at 1124 (emphasis added).  Providing relief to Redd, by contrast, would require

no federal supervision over the quality of representation, only its provision.

*Miles* is likewise inapposite. There, the plaintiffs challenged, on constitutional and statutory grounds, a plan by the Los Angeles County Superior Court to reduce the number of courthouses hearing unlawful detainer cases from 26 neighborhood courthouses to five centrally located "hub" courts. 801 F.3d at 1062. The plaintiffs sought "an injunction preventing [the Los Angeles superior courts] from eliminating even a single courthouse that, prior to the [state's] fiscal crisis, heard unlawful detainer actions. They also request[ed] an order requiring [the superior courts] to hold public meetings before planning any future unlawful detainer courtroom closures, and for the district court to retain jurisdiction for an unspecified period of time to ensure compliance." *Id.* at 1064. As *Miles* explained, the relief requested required "ongoing" interference with the administration of the state's judicial system. *Id.* In light of the "breadth of Plaintiffs' requested relief," *Miles* concluded that abstention under *O'Shea* was appropriate. *Id.* In so doing, *Miles* distinguished *Eu* on the ground that *Eu* did not call for "the use of injunctive power to restructure the state courts." *Id.* at 1065. The same is true here.

**4.**

Finally, even if abstention were otherwise appropriate, we would affirm the district court's abstention ruling because *O'Shea* abstention applies only "*in the absence of a showing of irreparable injury which is 'both great and immediate.'*" *O'Shea*, 414 U.S. at 499 (emphasis added) (quoting *Younger*, 401 U.S. at 46). Here, Redd's 26-year delay in the appointment of habeas counsel has indisputably caused him "great and immediate" irreparable harm. *Id.*

According to his complaint, he has waited under a death
sentence without the assistance of counsel in investigating,
developing, and litigating his habeas challenges to his
conviction and his sentence, despite California's promise of
appointed counsel.  During this quarter century, witnesses
have died and valuable memories and evidence have been
lost.

* * * *

We emphasize that we are permitting Redd's individual
claim for federal relief to go forward "not without some
trepidation," *Eu*, 979 F.2d at 704.  But Redd has been
waiting 26 years to litigate his state habeas petition.  The
question whether the delay in appointment of habeas counsel
violates his federal due process rights is collateral to, and not
the subject of, his habeas proceeding.  Rather than "disrupt
the normal course of proceedings in the state courts,"
*O'Shea*, 414 U.S. at 501, appointment of counsel would
allow Redd's habeas proceeding finally to move forward.
Further, providing declaratory relief as to whether California
has violated Redd's due process rights by failing to appoint
postconviction counsel for 26 years would not require the
court "to monitor the substance of individual cases on an
ongoing basis." *Courthouse News*, 750 F.3d at 790.  And
whether any declaration Redd may obtain draws the line at
the 26-plus year delay he has experienced or at some other
point, the declaration would "serve a useful purpose in
clarifying and settling the legal relations between the
parties." *Eu*, 979 F.2d at 703.  Should Redd later seek more
intrusive relief in federal court, an *O'Shea* analysis would
have to be conducted anew and could well come out
differently.  For these reasons, the exceedingly compelling
circumstances presented in this case outweigh at this

juncture the considerable comity concerns asserted by the State Officers.

We therefore decline the State Officers' invitation to abstain under *O'Shea* and proceed to the merits of Redd's claims.[10]

## C. Procedural Due Process

To assess Redd's Fourteenth Amendment procedural due process claims, we first examine his asserted property or liberty interests and then consider whether the state's procedures were constitutionally sufficient to protect those interests. *See K.W. ex rel. D.W. v. Armstrong*, 789 F.3d 962, 972–73 (9th Cir. 2015); *Zerezghi v. U.S. Citizenship & Immigr. Servs.*, 955 F.3d 802, 808 (9th Cir. 2020). On appeal, Redd raises three closely related procedural due process theories. He asserts that he has both a property interest and a liberty interest in state-appointed habeas counsel, both stemming from California's statutory guarantee. In addition, Redd contends that he has a liberty interest in petitioning for habeas corpus, and that, based on the operation of California's habeas system, the appointment of counsel is necessary to protect that liberty interest. We conclude that Redd has plausibly alleged a violation of his state-created property interest in the appointment of habeas counsel, and so do not reach his alternative argument that he has a liberty interest based on the same statutory guarantee. As for his liberty interest in petitioning for habeas corpus, we conclude that his complaint as currently drafted does not state a claim.

---

[10] As Redd acknowledges in his briefing, the district court may reassess whether abstention is appropriate should he seek class certification; we do not pass on that question.

We review de novo the district court's dismissal of Redd's complaint for failure to state a procedural due process claim under Federal Rule of Civil Procedure 12(b)(6). *See Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022). Given that "this case was resolved on a motion to dismiss for failure to state a claim, the question below was 'not whether [Redd] will ultimately prevail' on his procedural due process claim . . . but whether his complaint was sufficient to cross the federal court's threshold." *Skinner*, 562 U.S. at 529–30 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) and citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002)). The complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Boquist*, 32 F.4th at 773 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007).

### 1. Property Interest in State-Appointed Habeas Counsel

Redd contends that he has a protected, state-created property interest in state-appointed habeas counsel, and, because of the exceedingly long delay in appointing counsel, he has been denied that right without due process. The State Officers do not dispute that a state's guarantee of appointed counsel could constitute a protected property interest, contending only that Redd has received all the process due with respect to that interest. We disagree and conclude that Redd has plausibly alleged a due process claim based on deprivation of his property interest in state-appointed habeas counsel.

**(a)**

As an initial matter, Redd did not advance this theory in district court in opposition to the State Officers' motion to dismiss, as the State Officers note. But rather than argue that we should decline to consider it as a result, the State Officers in their briefing addressed the issue on the merits. " '[T]his court will not address waiver if not raised by the opposing party.' " *United States v. Doe*, 53 F.3d 1081, 1082 (9th Cir. 1995) (quoting *United States v. Schlesinger*, 49 F.3d 483, 485 (9th Cir. 1995)). For this reason, as well as because this pure legal question has been sufficiently briefed by the parties, and in light of the extraordinary delay Redd has already experienced and the injustice that would otherwise result, we exercise our discretion to resolve the issue. *See Singleton v. Wulff*, 428 U.S. 106, 121 (1976); *Carrillo v. Cnty. of L.A.*, 798 F.3d 1210, 1223 (9th Cir. 2015).

**(b)**

Due process protects property interests "well beyond actual ownership of real estate, chattels, or money." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 571–72 (1972). Courts have recognized a range of state-created property interests protected by due process, including property interests in utility service*, Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9, 11–12 (1978), public education, *Goss*, 419 U.S. at 573, welfare benefits, *Goldberg*, 397 U.S. at 261–63, driver's licenses, *Bell v. Burson*, 402 U.S. 535, 539 (1971), nursing care, *O'Bannon v. Town Ct. Nursing Ctr.*, 447 U.S. 773, 786 (1980), a cause of action, *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 429–30 (1982), and a type of immigration petition, *Zerezghi*, 955 F.3d at 809. *See also Greene v. Babbitt*, 64 F.3d 1266, 1272 (9th Cir. 1995) (collecting examples). Recognizing such property rights

"protect[s] those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined." *Roth*, 408 U.S. at 577.

"The hallmark of property . . . is an individual entitlement grounded in state law." *Logan*, 455 U.S. at 430; *see also Town of Castle Rock. v. Gonzales*, 545 U.S. 748, 756–57 (2005). "To have a property interest in a benefit, a person must 'have a legitimate claim of entitlement to it,' not just 'an abstract need or desire for it.'" *K.W*, 789 F.3d at 972 (quoting *Roth*, 408 U.S. at 577). We look to "the language of the statute and the extent to which the entitlement is couched in mandatory terms" to determine whether state law gives rise to a protected property interest. *Greene*, 64 F.3d at 1272; *see also Ching v. Mayorkas*, 725 F.3d 1149, 1155 (9th Cir. 2013).

By its mandatory language, California law leaves no discretion to deny habeas counsel to indigent capital prisoners who opt for appointed counsel. As noted, California Government Code section 68662(a) provides that the court "shall enter an order" appointing habeas counsel for indigent capital prisoners who have accepted the offer to appoint counsel. *See also* Cal. Penal Code § 1509(b). Accordingly, indigent capital prisoners are "statutorily entitled to appointed habeas corpus counsel." *Morgan*, 50 Cal. 4th at 941; *see also People v. Superior Ct. (Morales)*, 2 Cal. 5th 523, 526 (2017) (indigent prisoners subject to capital sentences are "entitled to the appointment of habeas corpus counsel"); *In re Sanders*, 21 Cal. 4th 697, 718 (1999) ("state law *requires* appointment of counsel to represent capital defendants in postconviction proceedings" (emphasis added)).

Further, the individual statutory right to counsel for capital habeas petitions directly benefits capital prisoners, "protect[ing] the[ir] interests . . . by assuring that they are provided a reasonably adequate opportunity to present [] their habeas corpus claims." *Barnett*, 31 Cal. 4th at 475; *see also Morgan*, 50 Cal. 4th at 937; *Sanders*, 21 Cal. 4th at 717. Redd's entitlement to the appointment of counsel also resembles more traditional conceptions of property in that representation by counsel has an "ascertainable monetary value." *Town of Castle Rock*, 545 U.S. at 766–67 (quoting Thomas W. Merrill, *The Landscape of Constitutional Property*, 86 Va. L. Rev. 885, 964 (2000)). Like the state-created entitlements to public education, nursing care, or utility service, access to counsel is a valuable service for which counsel is recompensed. And indeed, in the context of considering a Takings Clause claim by an attorney required to donate his services to a court, we have previously recognized that "there is no question that [an attorney's] services constitute private property." *Scheehle v. Justs. of Supreme Ct. of Ariz.*, 508 F.3d 887, 893 n.6 (9th Cir. 2007). In sum, California law gives rise to a protected property interest in appointed counsel.

**(c)**

The State Officers' sole contention in response to Redd's property interest argument is that because California does not guarantee the appointment of counsel within a specific time frame, "under California law, Redd has received everything to which he is entitled." We disagree.

First, contrary to the State Officers' contention, California law does direct the appointment of counsel within a reasonable time, although it does not provide a specific deadline. California Penal Code section 1509(f) provides

that the superior court must conduct capital habeas review proceedings "as expeditiously as possible, consistent with a fair adjudication."  The superior court must likewise act promptly to appoint habeas counsel.  California Penal Code section 1509(b) requires the superior court to offer to appoint counsel "[a]fter the entry of a judgment of death in the trial court."  California Government Code section 68662(a) further provides that the court "shall enter an order" appointing habeas counsel for state prisoners subject to death sentences "*upon* a finding that the person is indigent and has accepted the offer to appoint counsel" (emphasis added). California Government Code section 68662's timing requirement is the same, verbatim, as 28 U.S.C. § 2261(c)(1), which this Court has interpreted to require "that counsel is to be appointed expeditiously." *Spears v. Stewart*, 283 F.3d 992, 1017 (9th Cir. 2002); *see also Ashmus v. Calderon*, 123 F.3d 1199, 1208 (9th Cir. 1997), *rev'd on other grounds*, 523 U.S. 740 (1998), *vacated*, 148 F.3d 1179 (9th Cir. 1998).[11]  This conclusion accords with

---

[11] Title 28 U.S.C. § 2261(c)(1) provides that for a state to qualify for expedited federal habeas review, the state must, inter alia, appoint counsel to capital prisoners in state postconviction proceedings "upon a finding that the prisoner is indigent and accepted the offer."  In *Ashmus*, this Court held that California's existing mechanism for the appointment of counsel to capital prisoners did not comply with 28 U.S.C. § 2261(c)(1) because "counsel . . . is not appointed until years after a prisoner accepts the offer of counsel." *Ashmus*, 123 F.3d at 1208. *Ashmus* held that California's practice of "tak[ing] years to appoint counsel" was incompatible with 28 U.S.C. § 2261(c)(1)'s requirement that the state provide for appointment of counsel "upon a finding that the prisoner is indigent and accepted the offer." *Ashmus*, 123 F.3d at 1208.

Approximately two months after *Ashmus*, the state legislature enacted California Government Code section 68662, adopting the temporal

the ordinary temporal meaning of the word "upon," which is "on the occasion of," "at the time of," "immediately following on," or "very soon after." *See* Upon, *Webster's Third New Int'l Dictionary* 2518 (1993) (definitions 10a, 10b); *see also* Upon, *Oxford English Dictionary* 301 (2d ed. 1989) (definitions 6, "[d]enoting the day of an occurrence, regarded as a unit of time"; 6b, "[i]n, at, or during (any period of time)"; 7a, "[o]n the occasion of"; 7b, "[i]mmediately after; following on"); *Olagues v. Perceptive Advisors LLC*, 902 F.3d 121, 129 & n. 4 (2d Cir. 2018) (explaining that when used temporally, "upon" means "on the occasion of" or "at the time of").

Other California statutes and policies reflect the requirement that capital habeas counsel be appointed in a timely manner. California Government Code section 68665(b), which directs the California Supreme Court to adopt competency standards for capital habeas attorneys, reflects the high court's obligation to ensure that the standards it adopts are consistent with its obligation "to provide timely appointment." Further, Policy 3 of the California Supreme Court's Policies Regarding Cases Arising from Judgments of Death (amended Jan. 2008)[12] provides that the "court's appointment of habeas corpus counsel for a person under a sentence of death shall be made

---

language of 28 U.S.C. § 2261(c)(1). *See* Cal. Stats. 1997, ch. 869, sec. 3 (Senate Bill No. 513). In so doing, the legislature aimed to "[p]rovide[] for legal representation of indigent death row prisoners to reduce the backlog of capital cases and to begin to comply with federal requirements for expedited federal habeas corpus procedures." California Bill Analysis, Senate Bill No. 513 (Sept. 11, 1997), Cal. Stats. 1997, ch. 869, sec. 3.

[12] Available at
Policies_Regarding_Cases_Arising_from_Judgments_of_Death.pdf.

simultaneously with appointment of appellate counsel or at the earliest practicable time thereafter."  Similarly, California Government Code section 68661(a), which authorizes the appointment of attorneys employed by the Habeas Corpus Resource Center to represent capital prisoners in their habeas proceedings, specifies that "[a]ny such appointment may be concurrent with the appointment of . . . counsel for purposes of direct appeal."  Under California's system, "the appointment of habeas corpus counsel should occur shortly after an indigent defendant's judgment of death" so that a habeas petition can be prepared "at roughly the same time that appellate counsel is preparing an opening brief on appeal." *Morgan*, 50 Cal. 4th at 937; *see also* Cal. Sup. Ct., *Policies Regarding Cases Arising from Judgments of Death*, Policy 3, std. 1–1.1 (a habeas corpus petition "will be presumed to be filed without substantial delay if it is filed within 180 days after the final due date for the filing of appellant's reply brief on the direct appeal"). So, although California law does not impose a *fixed* deadline for appointment of counsel, the state's promise is that habeas counsel will be appointed expeditiously, and so at a time when counsel will be useful.[13]

---

[13] In *Briggs v. Brown*, 3 Cal.5th 808 (2017), the California Supreme Court considered whether the state legislature's enactment of two timing requirements—that "the superior court . . . resolve an initial [habeas] petition within one year unless a substantial claim of actual innocence requires a delay" and that every initial habeas corpus proceeding be completed within two years—violated the state constitution's separation of powers doctrine. *Id.* at 845–46, 849 (discussing deadlines in Cal. Penal Code § 1509(f)).  *Briggs* held that these habeas processing deadlines were "merely directory" and therefore did not violate the separation of powers. *Id.* at 851, 860. Nonetheless, *Briggs* noted that

Second, and in any event, the State Officers' contention that the process for appointing counsel, including its precise timing, limits the property interest defined by the state misunderstands the nature of due process protections. State law creates the property interest, but it is federal constitutional law that determines the procedures required to protect that interest. *See Logan*, 455 U.S. at 432. A state "may elect not to confer a property interest," but "it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards." *K.W.*, 789 F.3d at 973 (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985)). "[B]ecause 'minimum [procedural] requirements [are] a matter of federal law, they are not diminished by the fact that the State may have specified its own procedures that it may deem adequate.'" *Logan*, 455 U.S. at 432 (quoting *Vitek v. Jones*, 445 U.S. 480, 491 (1980)).

Here, California law unmistakably confers on Redd— whom the California Supreme Court found indigent—an entitlement to have counsel appointed for pursuing his state habeas petition. *See* Cal. Gov't Code § 68662; Cal. Penal Code § 1509(b). Our question is whether Redd has plausibly alleged that the state's deprivation of that interest for two and a half decades violates due process. Whether the 26-year-long denial of counsel to Redd complies with *state* procedural requirements is beside the point, because the procedures required by the federal Due Process Clause are a matter of federal law.

---

"[l]egislated time limits can establish as a matter of policy that the proceedings they govern should be given 'as early a hearing and decision as orderly procedure . . . will permit.'" *Id.* at 860 (citation omitted).

In *Logan*, for example, the plaintiff had a property interest in using the state's adjudicatory procedures to redress employment discrimination. 455 U.S. at 429–30. Under the applicable state statute, once the plaintiff filed a discrimination charge, a state commission had 120 days in which to convene a fact-finding conference. *Id*. at 424–25. However, due to inadvertent delay, the commission failed to schedule the conference within the required timeframe, resulting in the dismissal of the plaintiff's claim for lack of jurisdiction. *Id.* at 426–27. The Supreme Court held that the 120-day requirement was "a procedural limitation on the claimant's ability to assert his rights, not a substantive element" of his property interest, and held that enforcing the 120-day limit deprived Logan of a federally protected property interest in the state-created right to have his charge heard. *Id.* at 431–33.

Similarly here, Redd alleges that due to the state's delay, his right to appointed counsel has been inadequately protected. Any timing rule for appointing counsel that would ratify the state's 26-year delay is not part of Redd's right to appointed counsel, but part of the state's procedures for securing that right—procedures that Redd alleges are inadequate. *Cf. Coe*, 922 F.2d at 531–32 (holding that the state's excessive delay in adjudicating a convicted prisoner's appeal violated due process). Put another way, recognizing that Redd's federally protected property interest in appointed counsel is subject to due process protections does not depend on whether California has mandated a specific deadline for the appointment of such counsel.

### (d)

Our final question is whether Redd has plausibly alleged that the State Officers have violated the Due Process Clause

by depriving him of his property interest without adequate process. The process required by the Constitution will depend on "the importance of the private interest and the length or finality of the deprivation, . . . the likelihood of government error, . . . . and the magnitude of the government interests involved." *See Logan*, 455 U.S. at 434 (citing, *inter alia*, *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976), and *Memphis Light*, 436 U.S. at 19). "[T]he State may not finally destroy a property interest without first giving the putative owner an opportunity to present his claim of entitlement." *Id*.

The State Officers do not dispute that, if Redd has a protected property interest in the appointment of counsel, then it is legally plausible that the state's procedures—which have allegedly deprived him of the assistance of counsel mandated under state law and prevented him from litigating his habeas claims for 26 years—are inadequate to protect that interest.[14] Their silence on this question is unsurprising. It is more than plausible that the value of Redd's entitlement to appointed habeas counsel has significantly diminished over the many years he has been waiting, and that the 26-year delay has deprived him of his property interest in appointed counsel.

---

[14] Redd asserts that the applicable standard for evaluating the adequacy of the state's procedures to protect his interest in appointed counsel is the three-part balancing test established in *Mathews*, a contention the State Officers also do not dispute. In the alternative, Redd asserts that he would also prevail under the standard set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), for assessing delays in criminal proceedings. *See also Betterman v. Montana*, 578 U.S. 437, 448 & n.12, 439–440 (2016); *Coe*, 922 F.2d at 530–32. Given the egregious circumstances alleged by Redd, his claim would be plausible under either standard.

Redd's interest in the appointment of habeas counsel is obviously substantial. In the context of federal habeas petitions, the Supreme Court has observed that "quality legal representation is necessary in capital habeas corpus proceedings in light of 'the seriousness of the possible penalty and . . . the unique and complex nature of the litigation.'" *McFarland v. Scott*, 512 U.S. 849, 855 (1994) (quoting former 21 U.S.C. § 848(q)(7)). "An attorney's assistance prior to the filing of a capital defendant's habeas corpus petition is crucial, because '[t]he complexity of our jurisprudence in this area . . . makes it unlikely that capital defendants will be able to file successful petitions for collateral relief without the assistance of persons learned in the law.'" *Id.* at 855–56 (quoting *Murray,* 492 U.S. at 14 (Kennedy, J., joined by O'Connor, J., concurring in judgment)).

The state's interest in appointment of habeas counsel for indigent capital prisoners is likewise substantial, as reflected in the state's decision to mandate such appointed counsel by statute. Appointing such counsel "promotes the state's interest in the fair and efficient administration of justice." *Barnett*, 31 Cal. 4th at 475; *accord Morgan*, 50 Cal. 4th at 937; *see also In re Sanders*, 21 Cal. 4th 697, 717 (1999) (explaining that appointment of habeas counsel to represent indigent capital defendants "promote[s] the cause of justice") (citation and internal quotation marks omitted).

Redd has also plausibly alleged that the deprivation resulting from a 26-year delay is significant and potentially irreversible. Redd alleges "the delay in the appointment of habeas corpus counsel . . . has significantly and adversely affected his ability to develop, present, and prove claims that his conviction and death sentence are unlawful," not only during his twenty-six-year wait but ever. "[N]umerous

witnesses—including immediate family members and at least one member of his trial defense team—have died, and many other persons with critical information have become infirm or impaired or have had substantial memory loss." Further, "critical documents and other exculpatory evidence also have been lost or destroyed." Redd's allegations are consistent with this Court's observation that when there is a lengthy state postconviction "delay, there is a substantial likelihood that witnesses will die or disappear, memories will fade, and evidence will become unavailable." *Phillips v. Vasquez*, 56 F.3d 1030, 1036 (9th Cir. 1995); *accord Coe*, 922 F.2d at 532. No matter how skilled, any attorney appointed to represent Redd in his habeas petition at this late date will begin with an immense disadvantage, vastly reducing or entirely negating the value of Redd's entitlement.

Further, a "system or procedure that deprives persons of their claims in a random manner . . . necessarily presents an unjustifiably high risk that meritorious claims will be terminated." *Logan*, 455 U.S. at 434–35. Here, California law guaranteed the appointment of habeas counsel to Redd once he accepted the state's offer, *see* Cal. Gov't Code § 68662(a), and it is certainly plausible that the extreme delay Redd has suffered has by now erroneously deprived him of his property interest in the appointment of such counsel.

At the same time, the state's challenge in providing capital habeas counsel to those indigent prisoners who need it is great. But Redd alleges that the State Officers could have taken a number of actions that would have reduced the delay in appointment of counsel. *See supra* Section II.A. No doubt the State Officers will wish to put on evidence that requiring them to take any further action is unduly

burdensome.  But at the pleading stage Redd's allegations
are at least plausible.

We therefore reverse the district court's dismissal of
Redd's complaint for failure to state a procedural due
process claim.

## 2. Redd's State-Created Liberty Interest in Petitioning for Habeas Corpus

### (a)

Redd also contends that his complaint plausibly alleged
a procedural due process claim based on his liberty interest
in petitioning for habeas corpus.  It is common ground
between the parties that Redd's state-created right to petition
for habeas gives rise to a liberty interest protected by due
process.  The State Officers' acknowledgment is well-
taken.[15]

State laws governing postconviction relief can, under
certain circumstances, give rise to a liberty interest protected
by federal due process.  In *Osborne*, for example, Alaska had
established a process for vacating a conviction based on
newly discovered evidence.  557 U.S. at 64–65.  The Court

---

[15] Redd raises this formulation of his liberty interest theory for the first
time on his appeal.  Although he did not assert this precise liberty interest
in his opposition to the motion to dismiss in district court, the State
Officers do not object to his asserting this legal issue on appeal; instead,
they respond on the merits.  Once again, because "[i]t is well-established
that the government can waive waiver implicitly by failing to assert it,"
we exercise our discretion to consider the issue.  *See United States v.
Pridgette*, 831 F.3d 1253, 1258–1259 (9th Cir. 2016) (quoting *Tokatly* v.
*Ashcroft*, 371 F.3d 613, 618 (9th Cir. 2004 (citation omitted)); *see also
Carrillo*, 798 F.3d at 1223 (addressing an issue not raised in district court
"because the issue is purely one of law, and because our addressing it at
this juncture will not prejudice the" other party).

held that individuals seeking to challenge their Alaska convictions on that basis have a postconviction constitutionally protected liberty interest in demonstrating their innocence as state law permits. *Id*. at 68. Similarly, *Morrison* determined that the prisoner in that case had a state law "'liberty interest in demonstrating his innocence with new evidence' . . . . because California law provides a right to be released from custody pursuant to a writ of habeas corpus when there is no legal cause for imprisonment." 809 F.3d at 1064–65 (quoting *Osborne*, 557 U.S. at 68).

Likewise, California law guarantees Redd a right to challenge his conviction collaterally via a habeas corpus petition, so he has a constitutionally protected liberty interest in that right. *See* Cal. Penal Code §§ 1473, 1485, 1509; *Morrison*, 809 F.3d at 1065. California law specifies grounds for granting the writ; these grounds include a showing that the conviction is based on false evidence, Cal. Penal Code § 1473(b)(1)–(2); the existence of new evidence that more likely than not could have changed the outcome at trial, *id*. at § 1473(b)(3); evidence that a criminal conviction or sentence was sought or obtained based on racial, ethnic, or national origin bias, *id.* at § 1473(f); and other grounds demonstrating that the petitioner is "unlawfully imprisoned or restrained of their liberty," *id*. at § 1473(a). And California law requires that if a petitioner establishes that the challenged confinement is unlawful, the court "*must* discharge [the petitioner] from the custody or restraint under which [the person] is held." Cal. Penal Code § 1485 (emphasis added). Where, as here, state law contains "explicitly mandatory language specifying the outcome that must be reached if [state-law] substantive predicates have been met," the state law gives rise to a protected liberty interest. *Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1155

(9th Cir. 2012) (quoting *James v. Rowlands*, 606 F.3d 646, 656 (9th Cir. 2010). "[B]ecause California law provides a right to be released from custody pursuant to a writ of habeas corpus when there is no legal cause for imprisonment," *Morrison*, 809 F.3d at 1065, Redd has a protected liberty interest in challenging his conviction in state habeas.

### (b)

Redd contends that his complaint sufficiently states a claim that the state's procedures are inadequate to protect his liberty interest in petitioning for habeas. Based on his complaint as currently pleaded, we disagree.

Redd's liberty interest claim is premised on the theory that the delay in appointing him counsel undermined his ability to petition for habeas. Put another way, to succeed, he must show that under California's habeas system, he cannot vindicate his right to petition for habeas unless the state appoints him counsel.

As discussed earlier, Supreme Court precedent has not recognized a constitutional right to counsel in state habeas proceedings. *See supra* Section I.A. The State Officers contend that because Redd has no recognized federal constitutional right to appointed habeas counsel, his option to represent himself is sufficient to protect his liberty interest in habeas.

Redd's response, contained in his briefs, is that under California's habeas procedures, once he accepted the state's offer to appoint counsel, he had no option to withdraw his request for counsel and represent himself. As a result, he has been precluded from moving forward with his habeas petition during his decades-long wait for the appointment of counsel, while his ability meaningfully to develop and

present his habeas claims diminishes with each passing year. In other words, the theory Redd presents in his briefs is that the state induced him into accepting its seemingly advantageous offer to appoint counsel and then forced him to wait more than a quarter century for counsel to be appointed, with no off-ramp. The consequence, under this theory, is that having at the outset requested appointment of counsel, Redd has been deprived of his federally protected liberty interest in pursuing state postconviction relief at all, with no end in sight.

But Redd's operative complaint includes no such allegations.[16] His First Amended Complaint does not allege that he is unable to withdraw his election of appointed counsel, nor does it allege that he has, at any time since his initial request for appointed counsel, attempted to change course (either by filing a motion or otherwise) and seek to represent himself in his postconviction proceedings. Although Redd's appeal briefs represent that after he accepted the state's offer to appoint habeas counsel, his "*pro se* filings have been repeatedly rejected by the California Supreme Court on [this] ground," these allegations appear nowhere in his First Amended Complaint. It is also unclear whether any such *pro se* filings were submitted in connection with his direct appeal, in which he is represented by counsel, or his habeas petition, in which he is not.

---

[16] Should Redd seek to amend his complaint to make such allegations, nothing in this opinion precludes the district court from permitting amendment and considering whether Redd can state a liberty interest claim based on a habeas system in which California induces indigent capital prisoners into accepting its offer of appointed counsel and then requires them to wait decades without any subsequent self-representation right in habeas.

Thus, as presently drafted, Redd's First Amended Complaint does not allege that since he first requested appointed counsel, he has been unable to withdraw his request for appointment of counsel and instead litigate his habeas petition *pro se*.**[17]**  Under Supreme Court precedent, the absence of appointed counsel, without more, does not preclude Redd from vindicating his liberty interest in petitioning for habeas.  *See Coleman*, 501 U.S. at 752; *Murray*, 492 U.S. at 10; *see also supra* Section I.A.  For this

---

[17] In asserting that he is now unable to represent himself in his habeas petition, Redd relies on *In re Barnett*, 31 Cal. 4th 466 (2003), which concerned "whether inmates have a right to self-representation when seeking habeas corpus relief in our courts."  *Id*. at 475.  *Barnett* concluded that California "[i]nmates . . . have no state constitutional right to self-representation in habeas corpus proceedings," nor do they have such a right under the federal Constitution.  *Id. Barnett* then explained that California Government Code Section 68662 "alludes to the matter of self-representation" by recognizing a capital prisoner's ability to "reject[]" the offer to appoint habeas counsel when made, but it emphasized that that right is limited.  *Id.* at 476 (quoting, in part, Cal. Gov't Code § 68662).  Although Section 68662 "contemplate[s] that a capital inmate [seeking to pursue state postconviction relief] may decline [the] offer of counsel *at the outset*, so long as he or she fully understands the legal consequences of such a decision, [it] specif[ies] no right to withdraw an election of professional legal representation once made." *Id.* (emphasis added).  Redd relies on *Barnett* to assert that he may not proceed *pro se* in state habeas proceedings, because any right to represent himself must be asserted "at the outset," *id*., and he chose instead to opt for representation by counsel.  The State Officers dispute Redd's characterization of *Barnett*, maintaining that Redd is currently free to represent himself in his habeas petition even though he earlier requested counsel and that there is language in *Barnett* consistent with that conclusion.  In light of Redd's failure to allege in his First Amended Complaint that he is unable to withdraw his request for counsel, we do not consider whether *Barnett* would support such an allegation or what facts Redd would have to allege to make such an allegation plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

reason, Redd's complaint as currently formulated does not plausibly allege that California's procedures are inadequate to protect his liberty interest in petitioning for habeas.

## III. Conclusion

Redd has waited over a quarter of a century for California to appoint counsel to aid him in pursuing his capital habeas petition, despite state law assurances that counsel would be available to him promptly. As a result, the likelihood that a viable petition can be filed in the future is diminishing to the vanishing point, given the likely unavailability of witnesses and documents concerning the long-ago crime and trial.

For the reasons surveyed in this opinion, we conclude that the district court should not have dismissed Redd's procedural due process claim for failure to state a claim at the pleading stage. We reverse the dismissal and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**