**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

STEPHEN MORELAND REDD,
individually and on behalf of all
others similarly situated

   *Plaintiff-Appellant*,

   v.

PATRICIA GUERRERO, Chief
Justice of California; KIMBERLY
MENNINGER, Judge of the Superior
Court of California, County of
Orange

   *Defendants-Appellees*.

No. 21-55464

D.C. No. 2:16-cv-
01540-DMG-PJ

ORDER

Filed December 11, 2024

Before:  Marsha S. Berzon, Richard C. Tallman, and
Morgan Christen, Circuit Judges.

Order;
Statement by Judge Berzon;
Dissent by Judge Bennett

# SUMMARY[*]

## Procedural Due Process/Prisoner Civil Rights

The panel issued an order granting appellees' request to dismiss this appeal as moot, denying appellant's motion for substitution of a party, denying appellees' request to vacate the panel's decision, and denying as moot appellees' petition for panel rehearing and rehearing en banc.

Stephen Redd, a California state prisoner sentenced to death, alleged that state officials violated his procedural due process rights by failing to appoint postconviction relief counsel as required by California law. In October 2023, the panel issued an opinion holding that Redd had been deprived of a protected property interest—the right under state law to representation in habeas proceedings—for over a quarter century, and so had stated a plausible procedural due process claim for declaratory relief. Redd died two months after the opinion issued. The panel, in its discretion, declined to vacate its opinion.

Respecting the denial of rehearing en banc, Judge Berzon, joined by Judges Wardlaw, W. Fletcher, Paez, Tallman, and Christen, stated that the court correctly declined to take this case en banc for the sole purpose of vacating the panel's opinion. First, vacating a decision after the death of a litigant based on disagreement with the merits amounts to deciding a moot case, which is constitutionally forbidden. Second, in improperly addressing the merits of the *Redd* panel opinion, the dissent mischaracterizes the

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

holding of the panel opinion, misreads California law, exaggerates the practical consequences of letting the opinion stand, and dramatically recasts the panel's ordinary procedural due process analysis as "an affront to the principles of federalism."

Dissenting from the denial of rehearing en banc, Judge Bennett, joined by Judges R. Nelson, Collins, Lee, Bress, Bumatay, and VanDyke, stated that this case should have been taken en banc to vacate the panel's opinion, which is plainly wrong and presents an affront to the principles of federalism. The question presented to the panel was purely one of state law: whether California law guarantees appointment of habeas counsel within a certain time frame. Thus, the panel should have determined how the California Supreme Court would have answered the question. Had it done so, the panel would have been compelled to conclude that California law does not guarantee appointment of habeas counsel within a certain time.

**ORDER**

Appellees' request to dismiss this appeal as moot is GRANTED. The appeal is dismissed.

Appellant's motion for substitution of a party is DENIED. Appellees' request to vacate the panel's opinion is also DENIED.

Appellees' petition for rehearing is DENIED as moot. Judge Christen voted to deny Appellees' petition for rehearing en banc as moot, and Judges Berzon and Tallman so recommended. A judge requested a vote on whether to

rehear the matter en banc. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. Fed. R. App. P. 40(c). Judges Gould, Miller, and H.A. Thomas did not participate in the deliberations or vote in this case. Appellees' petition for rehearing en banc is thus DENIED.

This order shall constitute the mandate of this court.

---

BERZON, Circuit Judge, joined by WARDLAW, FLETCHER, PAEZ, TALLMAN, and CHRISTEN, Circuit Judges, respecting the denial of rehearing en banc:

Stephen Redd, a California state prisoner sentenced to death, brought a § 1983 claim alleging that California Supreme Court justices and Superior Court judges (the "State Officers") violated his federal due process right by failing, for 26 years, to appoint postconviction habeas counsel as required by California law. By statute, California promised Redd appointed counsel if he requested it. None was provided. As a result, Redd alleged, he would be unable to investigate and develop his habeas claims, as witnesses had become unavailable, evidence was lost, and memories had faded.

In October 2023, a three-judge panel ruled that Redd had been deprived of a protected property interest—the right under state law to representation in habeas proceedings—for over a quarter century, and so had stated a plausible procedural due process claim for declaratory relief. *Redd v. Guerrero*, 84 F.4th 874, 901 (9th Cir. 2023). Redd died two months after the opinion issued, rendering the appeal moot. The panel, in its discretion, declined to vacate its opinion.

My colleagues joining in the Dissent from Denial of Rehearing En Banc ("the Dissent") would have had the court take this case en banc for the sole purpose of vacating the panel opinion. But the court decided against this course of action—and correctly so, for two compelling reasons.

First, it would be inappropriate for our court to vacate a panel opinion because some of our colleagues disagree with the opinion on the merits. Vacating a decision after the death of a litigant based on disagreement with the merits amounts to deciding a moot case, which is constitutionally forbidden. *See U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 27 (1994). The only appropriate question for our court to have asked at this juncture was whether the panel abused its discretion in declining to vacate the *Redd* opinion. The answer to that question is no—the equitable considerations in this case do not justify the "extraordinary remedy of vacatur." *See Dickens v. Ryan*, 744 F.3d 1147, 1148 (9th Cir. 2014) (en banc) (quoting *U.S. Bancorp*, 513 U.S. at 26).

Second, in improperly addressing the merits of the *Redd* panel opinion, my dissenting colleagues mischaracterize the holding of the panel opinion, misread California law, exaggerate the practical consequences of letting the opinion stand, and dramatically recast the panel's ordinary procedural due process analysis as "an affront to the principles of federalism." Dissent from the Denial of Rehearing En Banc (Dissent) at 20.

# I

When an appeal becomes moot after the issuance of a three-judge panel decision, it "deprives a member of our court of the right to seek . . . an en banc rehearing in order to obtain a different decision on the merits." *United States v.*

*Payton*, 593 F.3d 881, 886 (9th Cir. 2010). Post hoc mootness does "leave[] open the opportunity to seek an en banc rehearing for the purpose of vacating [the underlying] decision." *Id.* But as the Supreme Court has admonished, it is "inappropriate . . . to vacate mooted cases, in which we have no constitutional power to decide the merits, on the basis of assumptions about the merits." *U.S. Bancorp*, 513 U.S. at 27.[1]

Vacatur due to post-decisional mootness is an "extraordinary remedy." *Dickens*, 744 F.3d at 1148. The decision whether to vacate is squarely "within [the court's] discretion based on equity." *Payton*, 593 F.3d at 885 (quoting *Humphreys v. DEA*, 105 F.3d 112, 114 (3d Cir. 1996)). So the only question an en banc court could decide is whether the *Redd* panel abused its discretion in declining to vacate its opinion. That assessment, in turn, depends on the specific facts of Redd's case. *See Dickens*, 744 F.3d at 1148; *Armster v. U.S. Dist. Ct. for the Cent. Dist. of Cal.*, 806 F.2d 1347, 1355 (9th Cir. 1986).

This court weighs three equitable considerations when deciding whether vacatur is appropriate: (1) whether the

---

[1] My colleagues who favor rehearing en banc suggest that *U.S. Bancorp* is not pertinent when evaluating whether to call a case en banc for the sole purpose of vacating a validly-issued opinion in a now-moot case. Dissent at 41 n.20. But *U.S. Bancorp*'s rationale has not been understood as limited to an appellate court's decision to vacate judgments of subordinate courts. Our court has regularly looked to *U.S. Bancorp* in deciding whether it is appropriate to vacate a panel decision through the en banc process. *See, e.g., Payton*, 593 F.3d at 885; *Dickens*, 744 F.3d at 1148; *Washington v. Trump*, 858 F.3d 1168, 1168 (2017). Three-judge panels have also drawn on *U.S. Bancorp* in deciding whether to vacate their own opinions in moot cases. *See, e.g., Navajo Nation v. U.S. Dep't of the Interior*, 907 F.3d 1228, 1229 (9th Cir. 2018).

opinion is "valuable to the legal community as a whole," *Dickens*, 744 F.3d at 1148 (quoting *U.S. Bancorp*, 513 U.S. at 26); (2) whether letting the opinion stand would result in prejudice to the parties, *id.*; and (3) whether mootness arose due to the voluntary conduct of the parties, *see, e.g.*, *Washington v. Trump*, 858 F.3d 1168, 1168 (2017) (citing *U.S. Bancorp*, 513 at 26). None of these factors supports vacatur in this case.

First, the *Redd* opinion is valuable to the legal community. Judicial precedents "are not merely the property of private litigants." *Dickens*, 744 F.3d at 1148 (quoting *U.S. Bancorp*, 513 U.S. at 26). Generally, precedent "should stand unless a court concludes that the public interest would be served by a vacatur." *U.S. Bancorp*, 513 U.S. at 26 (quoting *Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.*, 510 U.S. 27, 40 (1993) (Stevens, J., dissenting)); *see also Crespin v. Ryan*, 51 F.4th 819, 820 (9th Cir. 2022), *reh'g and reh'g en banc denied*, 56 F.4th 796 (9th Cir. 2023). Absent such a conclusion, there is "no reason to undo th[at] precedent and force future [courts] to duplicate [a panel's] efforts by re-deciding issues [it has] already resolved within the contours of article III." *Dickens*, 744 F.3d at 1148.

The *Redd* opinion focused on Redd's individual claims. There are, however, other capital prisoners who, like Redd, have waited many years for habeas counsel to be appointed. Their claims will have to be decided on the facts of their cases. But *Redd* will provide a decisional framework for district courts deciding these cases at the motion-to-dismiss stage. Vacating the *Redd* opinion would have "force[d]" future courts to "duplicate" the panel's careful efforts in setting out this framework. *See id*.

Second, declining vacatur would not have substantially prejudiced the State Officers. In other instances of involuntary mootness, this court has exercised its discretion to decline to vacate opinions. *See id.*; *see also Crespin*, 51 F.4th at 820. As in *Dickens* and *Crespin*, the State Officers here are not substantially prejudiced by the denial of en banc review, as the Officers are not entitled to rehearing or certiorari, both of which are discretionary forms of appellate review. And although the ruling will stand, the declaratory relief the *Redd* panel determined might be appropriate was limited. Others will not be entitled to relief unless they show prejudice to their habeas prospects due to delay in the appointment of counsel. Further, the State Officers will later have recourse to challenge the *Redd* opinion's holding if the other capital defendants litigate long delays in appointing counsel, including seeking en banc review and certiorari.[2]

The third factor to consider is "whether the party seeking relief from the judgment below caused the mootness by voluntary action." *U.S. Bancorp*, 513 U.S. at 24. Vacatur is particularly *in*appropriate where mootness arises voluntarily, *id.* at 25, but that principle doesn't mean that vacatur *is* appropriate where mootness arises by "happenstance." *Id.* Involuntary mootness, such as mootness caused by the death of one party, can provide "sufficient

---

[2] As the Dissent notes, the Supreme Court has on occasion granted certiorari after a case has become moot to vacate an appellate court's decision. Dissent at 43 n.21 (citing *Azar v. Garza*, 584 U.S. 726, 728–31 (2018) (per curiam)). But the Court has, in the same breath, acknowledged that the weighing of the "unique circumstances" of each case and the "balance of the equities" lies within a court's "discretion," meaning that "not every moot case will warrant vacatur" even if there might have been opportunity for further discretionary review were the case not moot. *Azar*, 584 U.S. at 729–30.

reason to vacate," *id.*, but vacatur under such circumstances is neither mandatory nor commonplace. This court has held, on several occasions, that the death of one of the parties after the publication of an appellate opinion did *not* warrant vacatur, because the equities did not otherwise support this extraordinary remedy. *See, e.g.*, *Dickens*, 744 F.3d at 1147–48; *Crespin*, 51 F.4th at 820.[3]

In sum, a "live controversy existed" when the panel rendered its opinion; the "precedent may provide guidance . . . to parties or other panels in future cases"; there is no substantial prejudice to the State Officers; and involuntary mootness is not alone sufficient to warrant vacatur here. *Black Mesa Water Coal. v. Jewell*, 797 F.3d 1185, 1185 (9th Cir. 2015). Accordingly, the *Redd* panel did not abuse its discretion in deciding not to vacate the opinion. There was no sound reason to convene an en banc court to second guess that exercise of discretion.

---

[3] My colleagues are mistaken in asserting that *Dickens* and *Crespin* are inapposite. Dissent at 43–44. *Dickens* was not decided purely on the prejudice prong; it emphasized that the precedent set by the en banc opinion would "undoubtedly affect cases [then] pending before th[e] court." 744 F.3d at 1148. So there, as here, the public interest prong militated strongly in favor of letting the opinion stand.

It is also incorrect to assert that my reliance on *Crespin* is "even further off-point" because in that case, "no party requested vacatur." Dissent at 44. That's irrelevant to whether the court properly declined to vacate the opinion it had issued, as well as incorrect. The same day that the three-judge panel in that case declined to vacate its filed opinion, one of the parties "moved for vacatur, but the motion was denied by text order." *Crespin*, 56 F.4th at 800 (VanDyke, J., dissenting).

## II

The inquiry should end there. For completeness, however, I explain why the attack on the merits of this case misses the mark on multiple fronts.

### A

The Dissent repeatedly—but incorrectly—insists that *Redd* requires the appointment of habeas counsel within a "certain," "specific," or "guaranteed" time frame. *See, e.g.,* Dissent at 20, 21, 29, 30, 33, 34, 35, 38. This characterization ignores the flexible, context-specific nature of *Redd*'s holding.

*Redd* expressly acknowledged that although California law "direct[s] the appointment of counsel within a reasonable time," "it does not provide a specific deadline." 84 F.4th at 894; *see also id.* at 895 ("California law does not impose a *fixed* deadline for appointment of counsel . . . ."). As the panel opinion explained, California Penal Code § 1509(f) requires that the superior court conduct capital habeas review proceedings "*as expeditiously as possible, consistent with a fair adjudication.*" *Id.* at 894 (emphasis added). The panel concluded that "the state's promise is that habeas counsel will be appointed expeditiously, *and so at a time when counsel will be useful.*" *Id.* at 895 (emphasis added). The decision thus equated "expeditiously" with "at a time when counsel will be useful," a context-dependent standard that does not impose a set time limit for the appointment of counsel.

The complaint for declaratory relief alleged that, in Redd's case, numerous witnesses had died; others with critical information had become infirm, impaired, or had substantial memory loss; and critical documents and other

exculpatory evidence had been lost or destroyed. *Id.* at 897–98. Given these allegations, the panel concluded, 26 years could be constitutionally too long to wait in Redd's case—not because Redd had waited for some "specific" period of time with no counsel appointed, but because the complaint plausibly alleged that "the value of Redd's entitlement to appointed habeas counsel ha[d] significantly diminished over the many years he ha[d] been waiting" for counsel. *Id.* at 896–97. Because the complaint's allegation was plausible and cognizable, dismissal was not warranted.

My dissenting colleagues nonetheless say that it is "impossible" for courts to comply with *Redd*. Dissent at 21, 34–38. But that isn't true; the flexible standard articulated in *Redd* contemplates that, in assessing what constitutes a "reasonable" delay, district courts will weigh both the State's legitimate administrative constraints and the loss in value of the right to counsel over time.

In short, my colleagues fundamentally misrepresent the nuanced, context-specific standard articulated in the *Redd* opinion by insisting that the decision imposes a rigid deadline for the appointment of habeas counsel. The remainder of the misfires in the objection to denial of rehearing en banc stem, in large part, from this mischaracterization.

## B

My dissenting colleagues assert that the *Redd* panel failed to consider how the California Supreme Court would have construed the right to the appointment of habeas counsel. Not so.

The panel's analysis of the state property interest hinged on California statutes, published California Supreme Court

policy, and California Supreme Court case law, including both decisions on which the Dissent expounds. *See Redd*, 84 F.4th at 894–96, 895 n.13 (discussing *Briggs v. Brown*, 3 Cal. 5th 808 (2017) and *In re Morgan*, 50 Cal. 4th 932, 939 (2010)). That analysis represented the panel's objective prediction of how the highest state court should—and so would—determine the scope of the capital defendant's property interest in appointed counsel, using available authority.[4]

In particular, the panel expressly considered *Briggs*, the California Supreme Court decision which, according to my dissenting colleagues, contradicts *Redd*. *Briggs* is in no way inconsistent with *Redd*'s holding, as the panel opinion explains. *See Redd*, 84 F.4th at 895 n.13.

The *Briggs* decision addressed whether the state legislature's enactment of two habeas timing requirements—(1) that "the superior court . . . resolve an initial petition within one year unless a substantial claim of actual innocence requires a delay" and (2) that every initial

---

[4] My dissenting colleagues suggest that the panel should have certified the state-law interpretive question to the state supreme court. Dissent at 40–41. Certifying state law questions to state supreme courts is a discretionary process; federal courts are ordinarily fully competent to interpret and apply state law. *See McKesson v. Doe*, 592 U.S. 1, 5 (2020). Questions certified to the California Supreme Court have sometimes taken years to resolve. *See, e.g., Rattagan v. Uber Techs., Inc.*, 553 P.3d 1213, 1222 (Cal. 2024) (answering in August 2024 a question this court certified in 2021). Certification in this case would have built in yet more delay in a case in which inordinate delay was the core concern.

Additionally, from a practical standpoint, it's unclear how the California Supreme Court could hear this case. All of its Justices, as well as all the judges of the California Superior Courts, are defendants, albeit in their administrative rather than judicial capacities.

habeas corpus proceeding be completed within two years—violated the state separation of powers doctrine. 3 Cal. 5th at 849. *Briggs* held that the state legislature's imposition of "fixed time limits on the performance of *judicial functions*" and interference with the courts' *jurisdiction* "raise[d] serious separation of powers concerns." *Id.* at 849–50 (emphasis added). To avoid "constitutional problems," *id.* at 854, the court construed the habeas processing deadlines as "not mandatory," *id.* at 855.

*Briggs* is in accord with the result reached in *Redd*. First, *Redd* does not limit or direct the "performance of judicial functions" or threaten to interfere with the court's "jurisdiction" over habeas cases or control over its docket; it concerned an administrative function, the appointment of counsel, not the decision of cases. State separation of powers concerns are therefore inapplicable.

Further, *Briggs* was concerned with absolute, short deadlines, not with flexible statutory provisions such as those at issue in *Redd*. *Briggs* was quite explicit that this distinction very much matters, declaring that "grants of priority to certain matters, and *directives to conduct proceedings as speedily as possible*, are a common feature of procedural statutes," and "[t]hese legislatively imposed priorities have never been held to impair the courts' authority to control the disposition of the cases on their dockets." *Id.* at 848 (emphasis added). What's more, *Briggs* specifically notes that the provisions of Proposition 66 "imposing a duty on [the California Supreme Court] to 'expedite the review' of capital cases, appoint [capital] counsel 'as soon as possible,' and grant extensions of time for briefing only for 'compelling or extraordinary reasons'" lie "within the ordinary range of legislative authority." *Id.* at 849 (quoting Cal. Penal Code § 1239.1(a)). "The same is

true," elaborated *Briggs*, "for provisions that require superior courts to conduct habeas corpus proceedings 'as expeditiously as possible.'" *Id.* (quoting Cal. Penal Code § 1509(f)). So *Briggs* directly *supports* the panel's objective prediction of how the California Supreme Court would interpret the statutes at issue here—as imposing permissible, flexible standards for the appointment of counsel, tied to both practical possibility and meaningful representation.

Aside from their reliance on *Briggs*, my dissenting colleagues invoke *In re Morgan*, maintaining that *Morgan* supports their assertion that the California Supreme Court would have disagreed with *Redd*'s interpretation of state law. Not so.

*Morgan* held that it is appropriate to defer the decision on a habeas petition until the court appoints habeas counsel and counsel has a reasonable opportunity to investigate the claim(s) for relief and amend the petition. 50 Cal. 4th at 942. In so ruling, the California Supreme Court explained that "[i]deally, the appointment of habeas corpus counsel should occur shortly after an indigent defendant's judgment of death." *Id.* at 937. *Morgan* acknowledged, however, a "critical shortage of qualified attorneys," making appointment of habeas counsel shortly after an indigent defendant's judgment of death difficult. *Id.* at 934, 937–38. Nowhere does *Morgan* suggest that appointing counsel within a time frame consistent with a fair adjudication would be "impossible," or sanction appointment of counsel more than a quarter century after the judgment of death.

The district court in *Redd*, addressing the "impossibility" argument in the context of standing, noted that "[a]t the very least, [the respondents] could more actively publicize the dire need for eligible volunteers and announce compensation

or reimbursement standards for the first time since the passage of Proposition 66." Pro bono representation is available in capital cases through national programs and pro bono initiatives at private law firms. *See, e.g.*, Autumn Lee & Emily Olson-Gault, *Saving Lives Through Pro Bono: The ABA Death Penalty Representation Project*, Am. Bar Ass'n (Sept. 19, 2019), https://www.americanbar.org/groups/ young_lawyers/resources/after-the-bar/public-service/saving-lives-through-pro-bono-the-aba-death-penalty-representation-project [perma.cc/57F4-WVB5] ("[The Death Penalty Representation Project] recruits pro bono law firms and attorneys to work on all stages and types of matters . . . As of this summer, the Project's volunteers have saved 100 prisoners from wrongful death sentences[.]"); *Previous Award Winners*, American Bar Association, https://www.americanbar.org/groups/committees/death_pen alty_representation/get_involved/volunteering/volunteer_fir ms/previous_winners [perma.cc/MC64-JQTQ] (identifying 35 major law firms "who have demonstrated exceptional commitment to providing high quality pro bono representation for indigent death row prisoners.").

The district court also identified other steps the State Officers could take to address Redd's alleged constitutional harm: Despite funding constraints, the Officers could "provide guidance for the hourly rate to be paid to habeas counsel, provide a different maximum for litigation expenses, allocate additional funds for habeas counsel from their own budget, provide additional resources to the [Habeas Corpus Resource Center, an entity established by the California Legislature in 1998 to provide representation to death row inmates in post-conviction proceedings], or otherwise attract qualified counsel."

These possibilities aside, it is critical to remember that *Redd* was decided at the motion to dismiss stage on a complaint requesting only declaratory relief. Letting the opinion stand does not impose an "impossible"—or any other—obligation on the State Officers. The only consequence of refusing to vacate the opinion is that other similarly-situated prisoners may be able to get past the pleading stage with a federal due process claim. At that point, the parties will have the opportunity to make a record and brief what constitutes a reasonable delay under the framework set forth in *Redd*, including practical considerations such as those emphasized by my dissenting colleagues that may explain some aspects of the delay in appointment.

C

Finally, the Dissent wrongly accuses the *Redd* panel of committing "[a]n affront to centuries-old principles of federalism" by "decreeing to the justices and judges of California what California law means." Dissent at 39, 40. This accusation falls flat.

As I have explained, the *Redd* opinion conducted an objective assessment of a right afforded by California law, starting with the state legislature's decision to codify the right to counsel on habeas for prisoners on death row. But the question presented to the panel was *not* "purely one of state law." Dissent at 20. The panel recognized that Redd had a *federal* due process right to procedures—here, timely implementation of a protected property interest— appropriate to vindicate the right to postconviction capital habeas counsel guaranteed to him under state law. In other words, this case concerns a state law issue embedded in a

federal constitutional framework, thereby triggering the familiar procedural due process analysis.

"The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 576 (1972). Property interests are "not created by the Constitution"; instead, they are "created and their dimensions are defined by . . . an independent source such as state law." *Id.* at 577. But "[i]f a state grants a property interest, its *procedures* for . . . modifying that interest do not narrow the interest's scope." *K.W. ex rel. D.W. v. Armstrong*, 789 F.3d 962, 973 (9th Cir. 2015) (emphasis added). "'[M]inimum procedural requirements are a matter of *federal* law.'" *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 432 (1982) (alterations omitted) (emphasis added) (quoting *Vitek v. Jones*, 445 U.S. 480, 491 (1980)). "[U]nder federal law, what process is due is determined by context, to be analyzed in accordance with the three-part balancing test described in *Mathews v. Eldridge*." *Roybal v. Toppenish Sch. Dist.*, 871 F.3d 927, 933 (9th Cir. 2017).

*Logan v. Zimmerman Brush Co.* models the required due process analysis. In that case, Logan challenged under the federal Due Process Clause the failure of a state agency to adjudicate his employment discrimination complaint, arguing that the failure had deprived him of his state property interest in using the state's adjudicatory process to vindicate his state-created rights. 455 U.S. at 426–27. The Supreme Court agreed, holding that reliance on the state's barrier to adjudicating such complaints after a specified time period "misunderst[ood] the nature of the Constitution's due process guarantee." *Id.* at 432. What mattered was not "the fact that the State may have specified its own procedures that

it may deem adequate"—a "conclusion" that would "allow the State to destroy at will virtually any state-created property interest." *Id.* (quoting *Vitek*, 445 U.S. at 491); *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). The question was, instead, whether the "procedural limitation on the claimant's ability to assert his rights" was sufficient process under the three-prong federal constitutional standard established in *Mathews v. Eldridge*. *See Logan*, 455 U.S. at 433–34.

*Redd* carried out precisely the analysis prescribed by *Logan*. The panel weighed the three *Mathews* factors and concluded that: (1) Redd had a substantial property interest in the statutorily guaranteed right to useful habeas counsel; (2) Redd had plausibly alleged that the risk that a 26-year delay in appointing habeas counsel would diminish the value of counsel was great; and (3) the State's challenge in providing capital habeas counsel was also great, but Redd plausibly alleged several actions the State Officers could have taken to reduce the delay. *Redd*, 84 F.4th at 896–98. *Redd* concluded only that the district court erred by dismissing on the pleadings Redd's request for a declaration that the State's 26-year delay violated his right to due process.

My dissenting colleagues cast this run-of-the-mill constitutional analysis as a "violat[ion of] the most basic principles of federalism" and a "dramatic overreach" by a federal court into state affairs, Dissent at 39, and ask, almost incredulously, "[H]ow can the federal Constitution dictate the timing of a state statutory right when the federal Constitution recognizes no such right?" Dissent at 30. But, as I've just explained, under well-established due process principles, it can. This hyperbolic framing of the question reveals a misunderstanding of the issue.

Rhetoric aside, the Dissent fails to appreciate decades of procedural due process jurisprudence. *Redd* explains that "the federal courts have long adjudicated claims that state procedures for protecting state-created property interests are inadequate under the federal Constitution." *Redd*, 84 F.4th at 890 (citing *Goss v. Lopez*, 419 U.S. 565, 577–84 (1975); *Goldberg v. Kelly*, 397 U.S. 254, 260–61 (1970)). Such state-created property rights are necessarily *not* rights recognized by the federal Constitution. In *Logan*, for example, there was no federal constitutional right to adjudicate an employment discrimination claim; the property right arose solely from state law. So there is no anomaly in applying federal due process standards to a state-created property right that has no parallel in federal constitutional doctrine. To the contrary, the Due Process Clause as applied to the states would be swallowed whole if a federal court couldn't express skepticism about the constitutional adequacy of state procedure to deliver on a state-guaranteed property interest without "intrud[ing]" on state sovereignty. Dissent at 29.

\*       \*       \*

Neither equitable considerations nor disagreements on the merits justified taking this moot case en banc for the sole purpose of vacating the panel opinion. It would have been a disservice to the legal community—and to the dignity of this court—to vacate on incorrect and exaggerated grounds. The court's decision to deny rehearing en banc in this case was the right one.

BENNETT, Circuit Judge, joined by R. NELSON, COLLINS, LEE, BRESS, BUMATAY, and VANDYKE, Circuit Judges, dissenting from the denial of rehearing en banc:

We should have taken this case en banc to vacate the panel's opinion, which is plainly wrong and presents an affront to the principles of federalism.**[1]** The panel incorrectly decides "a question of exceptional importance": whether the State of California is violating hundreds of indigent capital prisoners' due process rights by failing to timely appoint capital habeas counsel under California statutes. Fed. R. App. P. 35(a)(2).

*There is no federal constitutional right to habeas counsel. Coleman v. Thompson*, 501 U.S. 722, 752 (1991). In 1997, California, by statute, provided for habeas counsel for indigent defendants convicted of capital crimes and sentenced to death. The question presented to the panel was purely one of state law: whether *California* law guarantees appointment of habeas counsel within a certain time frame. Thus, the panel should have determined how the California Supreme Court would have answered the question. Had it done so, the panel would have been compelled to conclude

---

[1] We may rehear a case en banc to vacate a panel's opinion after a case has become moot. *See United States v. Payton*, 593 F.3d 881, 886 (9th Cir. 2010) ("It is true that our refusal to vacate the decision after it has become moot deprives a member of our court of the right to seek *sua sponte* an en banc rehearing in order to obtain a different decision on the merits (although it leaves open the opportunity to seek an en banc rehearing for the purpose of vacating our decision)."). Appellant died during the pendency of the appellees' petition for rehearing en banc. As is the case here, "mootness by happenstance provides sufficient reason to vacate." *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25 n.3 (1994).

that California law does not guarantee appointment of habeas counsel within a certain time.

But rather than predict how the California Supreme Court would interpret the relevant laws, the panel erroneously concluded that, even though the Federal Constitution does not require a state to confer a right to habeas counsel, the Federal Constitution *does* require the State of California to confer that right within a specific time. The panel's opinion effectively mandates, pursuant to 42 U.S.C. § 1983, that, under *California law*, California state court judges *must* appoint capital habeas counsel "within a reasonable time" or "expeditiously" to avoid due process violations. [2] *Redd v. Guerrero*, 84 F.4th 874, 894–95 (9th Cir. 2023). According to the panel, if California judges fail to appoint habeas counsel within that time frame, they are violating the Federal Constitution, no matter that it is impossible for the California courts to comply with the panel's holding, and no matter that the California Supreme Court has previously held that similar statutory habeas time limits on the performance of judiciary functions cannot be construed as imposing specific time limits. *See Briggs v.*

---

[2] Judge Berzon claims that the panel's opinion "does not impose a set time limit for the appointment of counsel." Berzon Statement at 10. But that claim is belied by the opinion itself. The opinion states: "California law does direct the appointment of counsel *within a reasonable time*, although it does not provide a specific deadline." *Redd v. Guerrero*, 84 F.4th 874, 894 (9th Cir. 2023) (emphasis added). "[T]he state's promise is that habeas counsel will be appointed expeditiously, and so *at a time when counsel will be useful*." *Id.* at 895 (emphasis added). While these are not fixed, specific dates, they are time frames within which the State must appoint habeas counsel. *Cf. In re Cmty. Voice*, 878 F.3d 779, 784–88 (9th Cir. 2017) (granting a mandamus petition because the agency failed to act "within a reasonable time").

*Brown*, 400 P.3d 29, 60–61 (Cal. 2017), *as modified on denial of reh'g* (Oct. 25, 2017).

The panel's opinion will have deleterious practical effects. All or some of the 362 prisoners similarly situated to Stephen Redd ("Redd") will likely file claims similar or identical to Redd's. Each California district judge will likely need to deny motions to dismiss, and in each lawsuit the State Officers[3] (or their representatives) will be tasked with presenting their evidence on the individual "burdensome[ness]" of taking further action as to each plaintiff. *Redd*, 84 F.4th at 898. Practically, the panel's opinion presents significant challenges to the already limited resources of the California judicial system. The panel's binding determination of the meaning of the California statutes as mandating that habeas counsel be appointed expeditiously, coupled with its reversal of the district court's dismissal of Redd's § 1983 action, will have an inappropriately destabilizing impact.[4]

---

[3] The panel's opinion defines the named defendants—the justices of the California Supreme Court and the judges of the California Superior Courts—as the "State Officers." *Redd*, 84 F.4th at 881–82.

[4] Mandating the expeditious appointment of habeas counsel for all (or many) of the 362 indigent capital prisoners would require a substantial increase in California's budget for both financial and human resources. According to the allegations in the First Amended Complaint ("FAC"), which we must assume to be true, *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001), a successful habeas petition "necessitated $328,000 in litigation expenses" in 2004. Multiplied by 362 (the number of other indigent capital prisoners in Redd's putative class), this would amount to over $118 million, even without accounting for inflation.

If California fails to meet the panel's new standard, then it would be put in a similarly untenable position: defending itself against claims like Redd's in federal court in up to 362 suits. The ambiguity in the panel's

The panel's precedential decision inflicts vast immediate and ongoing harm to federalism by allowing up to 362 indigent capital prisoners in California to use the federal courts to dictate what California state court judges must do under the panel's view of California law. The panel concluded that simply because California has elected to appoint postconviction counsel for indigent capital prisoners, this court—and every other federal court—can prescribe for the State Officers, including the Chief Justice of the California Supreme Court, how they must interpret state laws, allocate state judicial resources, structure the State's judicial system, and administer justice. The panel's holding represents dramatic overreach by a federal court and will have far-reaching effects on California's criminal justice system.

## I.

### A.

There is no federal constitutional right to habeas counsel. *Coleman*, 501 U.S. at 752. But since 1997, California has provided by statute that:

> The superior court[5] that imposed the sentence shall offer to appoint counsel to represent a state prisoner subject to a capital

---

"expeditiously" standard invites lengthy discovery bouts and motions practice on an already encumbered judiciary in already prolonged habeas cases. Even the panel recognizes that in response to suits like Redd's, the State will need to "put on evidence that requiring them to take any further action is unduly burdensome." *Redd*, 84 F.4th at 898.

[5] Before its amendment in 2016 by Proposition 66, the statute placed the responsibility for appointing habeas counsel on the California Supreme Court. *See* Cal. Gov't Code § 68652 (1997).

sentence for purposes of state postconviction proceedings, and shall enter an order containing one of the following:

(a) The appointment of one or more counsel to represent the prisoner in proceedings pursuant to Section 1509 of the Penal Code upon a finding that the person is indigent and has accepted the offer to appoint counsel or is unable to competently decide whether to accept or reject that offer.

(b) A finding, after a hearing if necessary, that the prisoner rejected the offer to appoint counsel and made that decision with full understanding of the legal consequences of the decision.

(c) The denial to appoint counsel upon a finding that the person is not indigent.

Cal. Gov't Code § 68662.

In 2016, California voters approved Proposition 66, which, among other things, added California Penal Code § 1509. *See* 2016 Cal. Legis. Serv. Prop. 66 ("Proposition 66") § 6.[6] Section 1509 provides that "[a]fter the entry of a judgment of death in the trial court, that court shall offer counsel to the prisoner as provided in Section 68662 of the Government Code." Cal. Penal Code § 1509(b). Section 1509(f) further provides that "[p]roceedings under this section shall be conducted as expeditiously as possible, consistent with a fair adjudication." *Id.* § 1509(f).

---

[6] Proposition 66 took effect on October 25, 2017. *See Briggs*, 400 P.3d at 61.

But according to the FAC, California courts have appointed no new habeas counsel to indigent capital prisoners since 2016, and 362 indigent capital prisoners besides Redd remain without habeas counsel. This delay is not new. Because of "the underfunding of the capital indigent defense program, there has been a lengthy delay in the appointment of counsel for . . . collateral appeals since" California has recognized a right to habeas counsel. As the complaint alleges, "[b]eginning in the late 1980s, [the California Supreme Court was] unable to perform the duty to appoint post-conviction counsel as the ever-increasing population on death row outstripped the California Supreme Court's appointment capability." The California courts' inability to appoint counsel stems from "California's failure to provide sufficient compensation and litigation expenses to attract private counsel to accept such appointments." In short, California courts simply cannot appoint habeas counsel because of "a critical shortage of qualified attorneys willing to represent capital prisoners in state habeas corpus proceedings." *In re Morgan*, 237 P.3d 993, 994 (Cal. 2010).

**B.**

Redd was a former Los Angeles County Deputy Sheriff who committed multiple commercial armed robberies. He was convicted in state court of one count of first-degree murder for shooting and killing a store employee, two counts of attempted murder, two counts of second-degree robbery, and two counts of second-degree commercial burglary. On February 28, 1997, Redd was sentenced to death. Redd requested the appointment of postconviction habeas counsel twenty-seven years ago, but none was appointed. *Redd*, 84 F.4th at 878.

Redd filed this action under § 1983,[7] claiming that the State Officers were violating his procedural due process rights by failing to appoint postconviction habeas counsel as promised and thus preventing him from developing and prosecuting his state habeas corpus petition for two decades.[8] *Id.* He brought the suit on behalf of himself and the other 362 indigent capital prisoners in California who have allegedly been deprived of timely appointment of state habeas counsel. *Id.* at 881–82. In opposing the State Officers' motion to dismiss, Redd asserted only a liberty interest, and not any type of property interest in the appointment of habeas counsel. *Id.* at 892. The district court dismissed Redd's complaint for failure to state a claim

_____

[7] As the State Officers noted in their petition for rehearing en banc, Redd did not avail himself of any state law remedies before filing this federal lawsuit:

> Although California law includes procedures by which a party may petition a state court to vindicate rights arising under state law, Redd did not attempt to invoke such state law procedures. *See* [*Redd*, 84 F.4th at 881–82]. Instead, after writing letters to the California Supreme Court protesting the delay in appointing habeas counsel for him, Redd filed this lawsuit, asking a federal court to compel California judicial officers to appoint habeas counsel for him. *Id.*

Dkt. No. 53 at 6.

[8] In *Redd v. Chappell*, 574 U.S. 1041 (2014), Justice Sotomayor, joined by Justice Breyer, issued a statement respecting the denial of certiorari suggesting that Redd "might seek to bring a 42 U.S.C. § 1983 suit contending that the State's failure to provide him with the counsel to which he is entitled violates the Due Process Clause." *Id.* at 1042. But Justice Sotomayor expressed no opinion "on the merits of th[is] possible argument[]." *Id.*

before the class certification stage. *Id.* at 878, 882–83. Redd appealed.

## C.

The panel reversed the district court's dismissal of Redd's complaint. It first addressed whether abstention was appropriate under *O'Shea v. Littleton*, 414 U.S. 488 (1974).[9] *Redd*, 84 F.4th at 886–91. The panel recognized that "the State Officers' federalism and comity concerns are surely significant," *id.* at 886, and that "this case does implicate the delicate balance 'between federal equitable power and State administration of its own law,'" *id.* at 888 (quoting *O'Shea*, 414 U.S. at 500). Even so, it concluded that *O'Shea* abstention was not appropriate because the relief Redd requested was somehow "less intrusive" than that requested in other cases in which the court exercised jurisdiction. *Id.*

For the first time on appeal,[10] Redd argued that "he ha[d] a protected, state-created property interest in state-appointed habeas counsel, and, because of the exceedingly long delay in appointing counsel, he ha[d] been denied that right without due process." *Id.* at 892. The panel agreed, holding that Redd had "plausibly alleged a due process claim based on deprivation of his property interest in state-appointed habeas counsel." *Id.* at 892. The panel reasoned that California law uses "mandatory language" and "leaves no discretion to deny habeas counsel to indigent capital prisoners who opt for appointed counsel." *Id.* at 893. The

---

[9] The panel also addressed standing and affirmed the district court's conclusion that Redd had standing, because "for purposes of this early stage of the litigation, . . . it is likely that a decision in Redd's favor would redress his injury." *Redd*, 84 F.4th at 884.

[10] The State Officers raised no waiver or forfeiture argument in their answering brief. *See Redd*, 84 F.4th at 892.

panel, construing California's statutes and policies that admittedly "do[] not impose a fixed deadline for appointment of counsel," *id.* at 895 (emphasis omitted), rejected the State Officers' contention that "California does not guarantee the appointment of counsel within a specific time frame," *id.* at 894.  Citing various California laws, the panel concluded that the use of "upon" in "upon a finding that the person is indigent and has accepted the offer to appoint counsel," Cal. Gov't Code § 68662(a), indicates that state officials *must* appoint habeas counsel "expeditiously, and so at a time when counsel will be useful" *id.* at 895, or "within a reasonable time," *id.* at 894.  Alternatively, the panel held that when California requires appointment of counsel is irrelevant because the timing of appointment is governed by federal constitutional law.  *Id.* at 895–96.  The panel then concluded that Redd had "plausibly alleged that the State Officers ha[d] violated the Due Process Clause by depriving him of his property interest without adequate process."  *Id.* at 896; *see also id.* at 896–98.[11]

## D.

On November 3, 2023, the State Officers filed a petition for rehearing en banc, arguing, among other things, that the panel's erroneous decision raises significant "federalism and comity concerns," as it "rewrites [the] state's law" in a way that will have "vast implications for how California courts administer their capital case docket."  Dkt. No. 53 at 5.  About two months later, while their petition was pending,

---

[11] The panel rejected Redd's claim, as alleged, that California's procedures are inadequate to protect his liberty interest in petitioning for habeas.  *Redd*, 84 F.4th at 898–901.  The panel did not reach Redd's claim that he has a liberty interest in state-appointed habeas counsel.  *Id.* at 891–92.

the State Officers notified the court that Redd had died on December 21, 2023. Dkt. No. 61 at 1. The panel agrees that Redd's death moots the case. But it denies the State Officers' request to vacate the panel's opinion, leaving in place a substantively wrong opinion that intrudes upon California's right to interpret its own laws, in violation of federalism principles.

## II.

### A.

To recap, between 1997 (when Redd was sentenced to death) and October 2017 (when Proposition 66 went into effect), Section 68652 made the California Supreme Court responsible for "offer[ing] to appoint [habeas] counsel" to Redd and "appoint[ing] . . . one or more counsel to represent [Redd] in postconviction state proceedings upon a finding that [Redd] [was] indigent and ha[d] accepted the offer to appoint counsel." Cal. Gov't Code § 68652 (1997). That responsibility shifted to the Superior Court when Proposition 66 took effect in October 2017. Cal. Gov't Code § 68662. Proposition 66 added that the appointment "shall be [made] as expeditiously as possible, consistent with a fair adjudication." Cal. Penal Code § 1509(f).

In considering Redd's due process claim, a threshold question presented to the panel was whether these *California* laws guarantee appointment of habeas counsel within a certain time frame. This is purely a question of state law, and thus the panel should have followed our well-established guidelines for interpreting state laws. "When interpreting state law, a federal court is bound by the decision of the highest state court." *In re Kirkland*, 915 F.2d 1236, 1238 (9th Cir. 1990). "In the absence of such a decision, a federal court must predict how the highest state court would decide

the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Id.* at 1239.

Presumably, the panel neglected to apply these principles because it held the incorrect view that federal constitutional law determines when California's state-created right to habeas counsel must be conferred. [12] *Redd*, 84 F.4th at 895–96 ("[I]t is federal constitutional law that determines the procedures required to protect that interest."); *id.* at 896 ("Put another way, recognizing that Redd's federally protected property interest in appointed counsel is subject to due process protections does not depend on whether California has mandated a specific deadline for the appointment of such counsel.").

But there is no federal constitutional entitlement to the appointment of habeas counsel *at any time*. *See Coleman*, 501 U.S. at 752. So how can the Federal Constitution dictate the timing of a state statutory right when the Federal Constitution recognizes no such right? It cannot. Federal constitutional law cannot require the appointment of habeas counsel by a certain time. The panel wrongly concluded otherwise because it treated California's statutes as mere procedural rules that protect an already acquired property interest. [13]

---

[12] Judge Berzon maintains this incorrect view in her statement. Berzon Statement at 16–19.

[13] Once an individual has acquired a protected property interest, then federal constitutional law applies. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 576 (1972) ("The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has *already acquired* in specific benefits." (emphasis added)).

"To have a property interest in a benefit, a person must 'have a legitimate claim of entitlement to it,' not just 'an abstract need or desire for it.'" *K.W. ex rel. D.W. v. Armstrong*, 789 F.3d 962, 972 (9th Cir. 2015) (quoting *Roth*, 408 U.S. at 577). But California's statutes define when it must confer the right to counsel—that is, when an indigent defendant becomes entitled to habeas counsel. So, like the other substantive (here, statutory) elements of indigency and acceptance of appointment, Cal. Gov't Code § 68662(a), California's timing requirement is a substantive element that limits the right itself, *see Roth*, 408 U.S. at 577 ("Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.").[14] Thus, the timing of when California must confer the right to counsel is governed by California law.

## B.

In its analysis interpreting California law, the panel discarded the California Supreme Court's decision in *Briggs*

---

[14] The panel's opinion relied on *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982), but that case is inapposite. *Logan* involved a state statute requiring that a state commission convene a factfinding conference within 120 days, *id.* at 424, which the Court found to be "a procedural limitation on the claimant's ability to assert his rights, not a substantive element of the [Illinois Fair Employment Practices Act] claim," *id.* at 433. Unlike *Logan*, this case does not involve any procedures created by state statute. The right that Redd asserted—the right to habeas counsel within a certain time frame—is a *substantive* right. For these same reasons, Judge Berzon's reliance on *Logan* is unpersuasive. Berzon Statement at 17–19.

because *Briggs* involved different habeas statutory timing requirements. *See Redd*, 84 F.4th at 895 n.13. But *Briggs* is highly instructive, if not controlling.

In *Briggs*, the California Supreme Court considered whether certain habeas timing requirements contained in Proposition 66 violated the California state constitution's separation-of-powers doctrine. 400 P.3d at 50–61. *Briggs* held that the timing requirements, even though they set strict deadlines, were "merely directive," *id.* at 60, "to avoid separation of powers problems," *id.* at 59. The court explained that it has "long recognized that imposing fixed time limits on the performance of judicial functions raises serious separation of powers concerns." *Id.* at 53. Even when limits appear to be statutorily mandated, California courts have refrained from construing them as such:

> [W]hile the [California] Legislature has broad authority to regulate procedure, the constitutional separation of powers does not permit statutory restrictions that would materially impair fair adjudication or unduly restrict the courts' ability to administer justice in an orderly fashion. Repeatedly, for over 80 years, California courts have held that statutes may not be given mandatory effect, despite mandatory phrasing, when strict enforcement would create constitutional problems.

*Id.* at 56.

Although *Briggs* did not interpret the *precise* laws at issue here, it provided a framework for interpreting statutory habeas time limits that implicate judicial functions. Under

*Briggs*, the laws governing the appointment of habeas counsel could not be construed as requiring courts to appoint counsel by any specific time because such a construction would amount to imposing a specific time limit "that would materially impair fair adjudication or unduly restrict the courts' ability to administer justice in an orderly fashion." *Id.* Rather than apply the analysis compelled by *Briggs*, the panel does precisely what *Briggs* deemed constitutionally improper: it imposes a specific time limit on the California judiciary that materially impairs the performance of judicial functions. [15]

---

[15] Judge Berzon's view that *Redd* is distinguishable from *Briggs* because "*Redd* does not limit or direct the 'performance of judicial functions,'" Berzon Statement at 13, is just that—Judge Berzon's view. She discusses no California authority to support that the California Supreme Court would conclude that appointment of capital habeas counsel within a certain time is not a judicial function that "would materially impair fair adjudication or unduly restrict the courts' ability to administer justice in an orderly fashion." *Briggs*, 400 P.3d at 56.

Judge Berzon also argues that *Briggs* is distinguishable because it "was concerned with absolute, short deadlines." Berzon Statement at 13. While *Briggs* involved fixed numerical time limits, 400 P.3d at 52, the California Supreme Court's analysis is not confined to fixed numerical time limits. Rather, *Briggs* explained that separation of powers concerns are implicated when "*statutory restrictions . . .* materially impair fair adjudication or unduly restrict the courts' ability to administer justice in an orderly fashion." *Id*. at 56 (emphasis added). What matters, then, is the nature of the requirement imposed and its impact on the court's "inherent authority and responsibility to fairly and efficiently administer all of the judicial proceedings that are pending before it." *Id.* at 55 (quoting *People v. Engram*, 240 P.3d 237, 246 (Cal. 2010)). Indeed, *Briggs* relied heavily on *Engram*, which did not involve a fixed numerical time limit. *Id.* at 55–56 (quoting *Engram*, 240 P.3d at 249–50).

But even if *Briggs* were not controlling, our task is to predict how the California Supreme Court would have decided the issue. *See In re Kirkland*, 915 F.2d at 1239. As discussed above, under *Briggs*, the California Supreme Court would not interpret the laws at issue as requiring appointment of habeas counsel within a certain time. Moreover, in interpreting California laws, the California Supreme Court would follow California's rules of statutory interpretation, including:

> [I]t is settled that the language of a statute should not be given a literal meaning if doing so would result in absurd consequences that the [California] Legislature did not intend. To this extent, therefore, intent prevails over the letter of the law and the letter will be read in accordance with the spirit of the enactment.

*In re Michele D.*, 59 P.3d 164, 168 (Cal. 2002).

Around the time that the California Legislature created the statutory right to habeas counsel for indigent capital inmates, there were more than 130 California capital prisoners waiting for habeas counsel. *Ashmus v. Calderon*, 123 F.3d 1199, 1204 (9th Cir. 1997), *rev'd for lack of a case or controversy*, 523 U.S. 740 (1998), *vacated*, 148 F.3d 1179 (9th Cir. 1998). And it was projected that the numbers would "increase by two or three . . . each month, and [that] it m[ight] take years from the date a condemned inmate requests the assistance of counsel until counsel who will take the case is found and appointed." *Id.* at 1205.

The California Legislature knew of these circumstances when it created the statutory right to habeas counsel, and

thus it could not have intended for the courts to appoint counsel within a guaranteed period when it was impossible to do so. *See* California Bill Analysis, S.B. No. 513 (Sept. 11, 1997), Cal. Stats. 1997, ch. 869, sec. 3 ("Currently, there are over 150 inmates on death row for whom no counsel has been appointed, either for purposes of the direct appeal or state habeas proceedings. . . . The State Public Defender is currently stretched as far as her budget will allow and many qualified private counsel are unwilling to accept new cases because of the low rate of compensation authorized by the Supreme Court."). The same circumstances that made it impossible for the courts to guarantee appointment of counsel within a certain time frame continued through the passage of Proposition 66.[16]

Given that it would have been impossible for California courts to guarantee appointment of habeas counsel within a certain time frame, the California Supreme Court would not find that the California Legislature intended the courts to do the impossible. Rather, the California Supreme Court would find that the California Legislature intended for courts to

---

[16] According to the FAC: "As a result of the underfunding of the capital indigent defense program, there has been a lengthy delay in the appointment of counsel for direct and collateral appeals since the relevant statute was enacted." "Proposition 66, however, has failed to ameliorate the systemic failure to appoint post-conviction counsel in a timely fashion." "[T]he rate at which California courts impose new death sentences outpaces the rate at which state habeas corpus counsel is appointed." "Between January 1, 2013, and December 31, 2017, the state imposed an average of 15 death sentences per year, while appointing counsel for indigent death-sentenced persons in an average of only 5.4 cases. Indeed, there have been no new habeas corpus counsel appointments to represent indigent death-sentenced persons since 2016." "Proposition 66 provides no funding for [appointment of capital habeas counsel] in the Superior Courts."

appoint counsel expeditiously after a finding of indigency, *if it was possible to do so*—that is, if qualified habeas counsel were available. Indeed, that is precisely what is required under Proposition 66.

Proposition 66 added California Penal Code § 1509, which provides that the Superior Court's offering of habeas counsel to a prisoner under California Government Code § 68662 "shall be conducted as expeditiously *as possible*, consistent with a fair adjudication." Cal. Penal Code § 1509(b), (f) (emphasis added). "Possible" means "being within the limits of ability, capacity, or realization." *Possible*, *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/possible (last visited Sept. 29, 2024). Even before Proposition 66 took effect, the California Supreme Court's policies stated that: "This court's appointment of habeas corpus counsel for a person under a sentence of death shall be made simultaneously with appointment of appellate counsel *or at the earliest practicable time thereafter*." Supreme Court Policies Regarding Cases Arising from Judgments of Death § 2-1 (amended Jan. 2008) (emphasis added), available at https://supreme.courts.ca.gov/sites/default/files/supremecourt/default/2021-10/Policies_Regarding_Cases_Arising_from_Judgments_of_Death.pdf.[17] Like "possible," "practicable" means "capable of being put into practice or of being done or accomplished." *Practicable*, *Merriam-Webster Dictionary*,

---

[17] The California Supreme Court "promulgated the Supreme Court Policies Regarding Cases Arising From Judgments of Death . . . to facilitate and standardize the filing of petitions for writs of habeas corpus in capital cases." *In re Clark*, 855 P.2d 729, 764 (Cal. 1993) (Lucas, C.J., concurring).

https://www.merriam-webster.com/dictionary/practicable (last visited Sept. 29, 2024).

The discussion in *In re Morgan* reinforces that the California Supreme Court would not interpret the statutes to require courts to appoint habeas counsel within a certain time frame. 237 P.3d 993. There, the California Supreme Court had to decide whether it should defer its decision on a habeas petition until it could appoint habeas counsel and until that appointed attorney had a reasonable opportunity to amend the petition. *Id.* at 994. In holding that deferral was appropriate, the court said that "[i]*deally*, the appointment of habeas corpus counsel should occur shortly after an indigent defendant's judgment of death." *Id.* at 996 (emphasis added). But the court highlighted why that was impossible:

> [O]ur task of recruiting counsel has been made difficult by a serious shortage of qualified counsel willing to accept an appointment as habeas corpus counsel in a death penalty case. Quite few in number are the attorneys who meet this court's standards for representation and are willing to represent capital inmates in habeas corpus proceedings. The reasons are these: First, work on a capital habeas petition demands a unique combination of skills. The tasks of investigating potential claims and interviewing potential witnesses require the skills of a trial attorney, but the task of writing the petition, supported by points and authorities, requires the skills of an appellate attorney. Many criminal law practitioners possess one of these skills, but few have both.

> Second, the need for qualified habeas corpus
> counsel has increased dramatically in the past
> 20 years: The number of inmates on
> California's death row has increased from
> 203 in 1987 to 670 in 2007.

*Id.* (footnote omitted).  The court explained that these were "circumstances beyond [its] control."  *Id.* at 998.  The California Supreme Court's statement that "[*i*]*deally*" counsel should be appointed "shortly after an indigent defendant's judgment of death," *id.* at 996 (emphasis added), and its insistence that timely appointment of habeas counsel is simply beyond the court's control, strongly suggest that the California Supreme Court would not interpret the statutes as mandating California courts to appoint habeas counsel by a certain time.

Rather than try to predict how the California Supreme Court would interpret the California statutes, the panel came up with its own interpretation of California law: habeas counsel must be appointed "within a reasonable time," *Redd*, 84 F.4th at 894, or "appointed expeditiously, and so at a time when counsel will be useful," *id.* at 895.  This is baseless. Under California's case law and rules of statutory interpretation, the California Supreme Court would not interpret the statutes as requiring California courts to appoint habeas counsel within a specific time frame.

## C.

While the panel recognized the State's "federalism and comity concerns [were] surely significant," *id.* at 886, it disregarded the long-held maxim that "a State's highest court is the final judicial arbiter of the meaning of state statutes," *Gurley v. Rhoden*, 421 U.S. 200, 208 (1975).  The

error in the panel's holding is simple: it concludes "California is under no federal constitutional obligation to appoint postconviction counsel for all indigent capital prisoners," *Redd*, 84 F.4th at 878, but because the State has *elected* to do so, this federal court is somehow empowered to mandate how the Chief Justice of the California Supreme Court and the other State Officers must interpret *state law*, implement *state law*, and administer and allocate *state judicial resources*. An affront to centuries-old principles of federalism, this holding represents dramatic overreach, the impact of which is to bind the justices and judges of California to the views of a federal court, not only as to the meaning of California law but also as to the structure of the State's judicial system. This court is not the final arbiter of California law, and the panel's improper assumption of that role violates the most basic principles of federalism. When the highest court of a state has not decided a question of purely state law, we "must use our best judgment in predicting what that court would hold in this case." *Tavernier v. Weyerhaeuser Co.*, 309 F.2d 87, 88 (9th Cir. 1962); *see also In re Kirkland*, 915 F.2d at 1239.

As the Supreme Court explained in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), "no clause in the Constitution purports to confer . . . upon the federal courts" the power "to declare substantive rules of common law applicable in a state," because the Constitution "recognizes and preserves the autonomy and independence of the states . . . in their judicial departments."[18] *Id.* at 78–79. "Supervision over . . .

---

[18] While *Erie* is known for its impact on diversity jurisdiction, the requirement that federal courts predict how the highest state court would rule on a particular issue extends beyond matters of diversity. *See, e.g.*, *Comm'r v. Est. of Bosch*, 387 U.S. 456, 465 (1967) ("This is not a diversity case but the same principle may be applied for the same

the judicial action of the States is in *no case permissible* except as to matters by the Constitution specifically authorized and delegated to the United States," and "[a]ny interference" with the judicial action of the states "is an invasion of the authority of the State, and, to that extent, a denial of its independence." *Id.* at 79 (emphasis added). The Supreme Court has reaffirmed that, when state law is unsettled, federal courts must attempt to "ascertain[] what the state courts may hereafter determine the state law to be." *Meredith v. City of Winter Haven*, 320 U.S. 228, 234 (1943). It is not for federal courts to engage in state lawmaking by decision, as the panel has done here.

The panel overstepped in decreeing to the justices and judges of California what California law means. And it overstepped in setting in motion a process of having federal district and appellate judges decreeing that the defendant State Officers here (those same justices and judges), are every day violating the federal constitutional rights of hundreds of individuals convicted of capital crimes.

Had the panel (as it should have) predicted how the California Supreme Court would have answered the question here, the panel would have affirmed the district court's decision. But at the very least, even if the panel had concluded that it was too hard to predict how the California Supreme Court would interpret the statutes at issue, despite the clear indicators already discussed, it should have certified the question to the California Supreme Court. [19]

---

reasons, viz., the underlying substantive rule involved is based on state law and the State's highest court is the best authority on its own law.").

[19] Judge Berzon says that "from a practical standpoint, it's unclear how the California Supreme Court could hear this case." Berzon Statement

The Supreme Court has recognized that certification "save[s] time, energy, and resources and helps build a cooperative judicial federalism." *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974). In deciding whether to certify a question, we consider: (1) whether the question presented is one with "important public policy ramifications" that has yet to be resolved by the state courts; (2) whether the issue is new, substantial, and of broad application; (3) the state court's caseload; and (4) "the spirit of comity and federalism." *Kremen v. Cohen*, 325 F.3d 1035, 1037–38 (9th Cir. 2003). Assuming the issue of California law is indeed undecided, all four factors favored certification. But the panel wrongly chose to impose its own incorrect views on how California should interpret its own laws.

**D.**

Judge Berzon claims that "[t]he only appropriate question for our court to have asked at this juncture was whether the panel abused its discretion in declining to vacate the *Redd* opinion." Berzon Statement at 5. I disagree.[20] If

---

at 12 n.4. But even if certification might have raised questions regarding recusal of the Chief Justice of California or other justices, that would have been a matter for those justices and the California Supreme Court.

[20] Judge Berzon relies on *U.S. Bancorp*, which addressed "whether appellate courts in the federal system should vacate civil judgments of subordinate courts in cases that are settled after appeal is filed or certiorari sought." 513 U.S. at 18; *see* Berzon Statement at 5. But that case does not address the standards for taking a case en banc. Neither do the cases from this court cited by Judge Berzon. Berzon Statement at 6 n.1 (citing *Payton*, 593 F.3d at 885; *Dickens v. Ryan*, 744 F.3d 1147, 1148 (9th Cir. 2014) (en banc); *Washington v. Trump*, 858 F.3d 1168, 1168 (9th Cir. 2017)). Thus, none of these cases foreclose us from taking a case en banc if it meets the Federal Rule of Appellate Procedure 35(a) standard.

a panel's precedential decision is flat-out wrong on the merits in a case that becomes moot while the petition for rehearing en banc is pending, we have an obligation to remove it from our case law by vacating it en banc, if taking the case en banc meets the Federal Rule of Appellate Procedure 35(a) standard.  For the reasons discussed above, this case meets that standard, as it raises the exceptionally important question whether the State of California is violating hundreds of indigent capital prisoners' due process rights by failing to timely appoint capital habeas counsel under California statutes.  *See* Fed. R. App. P. 35(a)(2).

I believe Judge Berzon is also wrong on whether the panel abused its discretion in declining to vacate *Redd*. Berzon Statement at 7–9.  The analysis for vacatur requires us to look at three equitable considerations: whether the public interest (including value to the legal community) is advanced, whether prejudice to the parties would result, and whether the mootness arose because of voluntary or involuntary conduct.  *See U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 24–27 (1994); *Dickens v. Ryan*, 744 F.3d 1147, 1148 (9th Cir. 2014) (en banc).  These equitable considerations compel vacatur.

While judicial precedents are valuable to the legal community, Judge Berzon ignores that there is a strong countervailing public interest: "[T]he public interest is best served by granting relief when the demands of 'orderly procedure' cannot be honored."  *U.S. Bancorp*, 513 U.S. at 26–27 (citation omitted) (quoting *United States v. Munsingwear, Inc.*, 340 U.S. 36, 41 (1950)).  Such is the case here, as Redd's death has foreclosed the State's ability to seek review of this case on the merits.  *See id.* at 27 ("Congress has prescribed a primary route, by appeal as of right and certiorari, through which parties may seek relief

from the legal consequences of judicial judgments."). Thus, the first factor does not conclusively weigh in one party's favor.

Second, the prejudice to the State is substantial. Even though the State is not entitled to rehearing or certiorari, the Supreme Court has recognized that the inability to seek such discretionary review of the merits weighs in favor of prejudice.[21] *See id.* at 25 ("A party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment."). Further, despite Judge Berzon's claims to the contrary, the effect of *Redd* will be extensive. *Redd* sets forth a blueprint for all of California's 362 indigent capital prisoners to follow if the State does not appoint counsel "expeditiously"—something even the FAC admits that California has been unable to do since the late 1980s. Thus, under *Redd*, the State will have to defend itself against claims like Redd's in federal court in up to 362 suits.

Finally, the last factor weighs in the State's favor. The case became moot because of Redd's death, an involuntary reason. This factor and the prejudice factor therefore both favor the State. Because the only remaining consideration, the public interest factor, does not conclusively weigh in one party's favor, the equitable considerations compel vacatur. The panel abused its discretion in finding otherwise.

Judge Berzon relies on inapposite cases in arguing that the panel did not abuse its discretion in declining to vacate *Redd*. Berzon Statement at 8–9 (citing *Dickens*, 744 F.3d at

---

[21] Indeed, in cases where mootness has prevented the losing party from seeking review of the merits, the Supreme Court has granted certiorari after the case became moot to vacate the court of appeals' decision. *Azar v. Garza*, 584 U.S. 726, 728–31 (2018) (per curiam).

1148; *Crespin v. Ryan*, 51 F.4th 819, 820 (9th Cir. 2022)). In *Dickens*, we determined that there was no prejudice to the party requesting vacatur because, unlike here, "[b]oth parties' claims ha[d] been subjected to en banc review." 744 F.3d at 1148. Indeed, we relied on that fact to distinguish two cases in which we had determined that vacatur was proper. *Id.* at 1148 n.2. *Crespin* is even further off-point. In that case, we declined to vacate the filed opinion after specifically noting that "[n]o party ha[d] sought vacatur." 51 F.4th at 820.

## III.

The panel neither evaluated how the California Supreme Court would address the statutory interpretation issue nor certified this question. And the panel's decision conflicts with California precedent on similar timing issues, which alone warranted taking this case en banc to vacate the panel's substantive error. A decision that implicates "significant" "federalism and comity concerns," *Redd*, 84 F.4th at 886, but then disregards them, warranted rehearing en banc. We should have taken this case en banc to vacate the panel's far-reaching and intrusive opinion, which effectively dictates that California and its judges must appoint habeas counsel to indigent capital prisoners within a certain time frame. I respectfully dissent from our decision not to rehear this case en banc.